[No. 26004.   *En Banc.*   August 20, 1936.]

THE STATE OF WASHINGTON, *Respondent,* v. ELBERT B. LINDSEY *et al., Appellants.*[1]

[1]Reported in 61 P. (2d) 293.

*E. R. Lindsey,* for appellants.

*Ralph E. Foley* and *C. C. Quackenbush,* for respondent.

Holcomb, J.—This appeal is from a judgment and sentence upon a verdict of conviction.

On September 4, 1935, an information was filed in the office of the clerk of the superior court of Spokane county, charging defendants with the crime of grand larceny, as follows:

"That the said defendants, Elbert B. Lindsey, and E. R. Lindsey, in the County of Spokane, State of Washington, on or about the 15th day of April, 1935, then and there being, did then and there wilfully, unlawfully, feloniously and fraudulently, by color and aid of a check in words and figures as follows, to-wit:

'Spokane, Wash. Apl 15 1935   No. 2
Spokane and Eastern Trust Company
Pay to the order of Elbert B. Lindsey $40.00
Forty 00/.........................Dollars
E. R. Lindsey'

and endorsed on the back thereof: 'Elbert B. Lindsey, 1104½ W. 2nd Ave Co. Service National Guard' obtain from Peter M. Jacoy Forty dollars ($40.00) in money and currency of the United States of America, of the value of Forty Dollars, and the property of the said Peter M. Jacoy, with intent to deprive and defraud the said Peter M. Jacoy, the owner thereof, the said defendants then and there knowing that the maker and drawer of said check was not authorized or entitled to make or draw the same.''

This information was designated as the ''(2nd) Substituted Information,'' the first having been filed on May 3, 1935, but substituted by another on August 17, 1935, which in turn was again substituted by the one first above mentioned. Demurrers, motions to set aside the information, motions for separate trials and for bill of particulars, were all either overruled or denied. Each defendant entered pleas of ''not guilty'' and

''. . . former jeopardy by reason of a valid information in the same cause having been heretofore dismissed under such circumstances as to constitute a bar of another prosecution for the same offense.''

The record discloses that at the outset of the trial, each defendant was represented by counsel, but that defendant Elbert B. Lindsey objected to proceeding with the trial because he was unable to employ counsel, and as counsel had just then been appointed for him, and he had had no time to consult with his counsel or prepare his case, which objection was overruled. E. R. Lindsey objected to the introduction of any evidence, on the ground that the information does not state a cause of action as to him. At the conclusion of the state's case, motions to dismiss were denied, and at the conclusion of all the evidence, motions to dismiss or in the alternative to direct the jury to return verdicts of ''not guilty'' were also denied. Upon

the return of the verdict of "guilty," each defendant on September 16, 1935, filed motions in arrest of judgment and for a new trial.

On November 1st, the court entered its judgment, sentence and commitment upon the verdict, and four days later, on November 5th each defendant gave notice of appeal. Thereafter, a motion was made by one of the defendants to re-open the case on the motion for a new trial and in arrest of judgment or to set aside the verdict, judgment and sentence.

The court journal, under date of November 18th, has the notation:

"Oral order of November 1st, 1935, denying motion for new trial. Order signed by court, November 18th, 1935. . . .

"Order denying motion to re-open and motion for new trial denied. Motion to arrest judgment denied, or to set aside verdict judgment and sentence as to him being void denied."

On the same day, the court entered two written orders, one denying motion to re-open the case on motion for new trial and arrest of judgment on the ground that the court had no jurisdiction, the defendants having given notice of appeal; and the other, on the motion for a new trial, recites that the motion and argument were heard on November 1, 1935, the court having made oral decision that such motion was denied and judgment entered, it was ordered "that said motion for new trial be and the same is hereby denied and entered, as of November 1, 1935."

Many errors are assigned, but we feel that all except those which we will hereinafter discuss are without merit, and it would serve no useful purpose to extend this opinion to discuss them all.

The first assignment is directed to the overruling of objections to the admission in evidence of

statements attributed to one of appellants in the presence of police officers while, as it is claimed, such appellant was held in custody and the statements were made under duress, all in violation of the constitutions of the United States and of this state.

From the evidence, it cannot be said that as a matter of law there was duress; but, in any event, Rem. Rev. Stat., § 2151 [P. C. § 9217], provides:

"The confession of a defendant made under inducement with all the circumstances, may be given as evidence against him, except when made under the influence of fear produced by threats; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony."

Certainly, the record discloses much corroborating evidence to sustain the admissibility of the written admissions.

Appellants argue at length upon the court's refusal to dismiss or direct a verdict of acquittal because of the discrepancy between the number of the check stated in the information and the number on the check introduced in evidence upon which the convictions were obtained. This check was designated in the information as No. 2, while actually the number upon it was 21. This does not amount to a variance at law, inasmuch as it is not of a material nature and neither one of appellants was prejudiced nor the jury misled thereby. *State v. Fairfield,* 140 Wash. 349, 248 Pac. 810.

The contentions that the evidence fails to show intent to defraud or knowledge that there were no funds in the bank to meet the check is sufficiently answered by saying that there was evidence directly upon the question of knowledge, and the intent is for the jury to determine from all of the facts and circumstances.

■ The assignment as to the evidence of other crimes is governed by our decisions in *State v. Johnson*, 141 Wash. 324, 251 Pac. 589, and *State v. Martin*, 176 Wash. 637, 30 P. (2d) 660.

■ The contention that the information was subject to demurrer or appellants were entitled to a bill of particulars is answered by *State v. Price*, 173 Wash. 108, 21 P. (2d) 1038.

■ Appellants claim that, under the circumstances of this case, they had already been placed in jeopardy by the abandonment of the earlier informations by the filing of the second substituted information. The contention is invalid. In *State v. Navone*, 180 Wash. 121, 39 P. (2d) 384, we said:

"We find no merit in appellant's assignments of error based upon the filing of the second information and appellant's trial thereon. The second information was filed in the same proceeding as the first, and manifestly superseded the same. If the state should attempt to bring appellant to trial upon the first information, an appropriate remedy would doubtless be available to him.

"Neither do we find error in connection with the refusal of the trial court to require the state to elect as to upon which information it would proceed. Appellant was placed upon his trial upon the second information. He does not argue that he was surprised by this action, and we find no basis for his contention that he was prejudiced by the ruling of the trial court in connection with the matters above referred to."

■ The trial court is criticized because of its instructions relative to Rem. Rev. Stat., §§ 2601, sub. (2) and 2601-2 [P. C. §§ 8944, 8887]. Each of these sections defines a crime by the fraudulent issuance or passage of a check. The acts of the defendants complained of in the information constituting, as they did, but one transaction which involved both of these men, it was proper for the court, where, as in this case,

there were two statutes, one or both of which might have been violated, to instruct the jury as to both laws.

■ A number of assignments deal with the sentence. At the time the crime was committed on April 15, 1935, the law provided that the court fix the penalty at not more than fifteen years imprisonment (Rem. Rev. Stat., § 2605 [P. C. § 8948]), and the minimum of not less than six months nor more than five years (Rem. Rev. Stat., § 2281 [P. C. § 8716]). At the time of the trial, however, a new law had come into existence (Chapter 114, Laws 1935, p. 308, 1935 Sup., § 10249-1 [P. C. § 4503-31] *et seq.*), which created a "board of prison, terms and paroles" and provided, among other things (§ 10249-2 [P. C. § 4503-32]):

"When a person is convicted of any felony . . . the court shall sentence such person to the penitentiary or . . . to the reformatory, and shall fix the maximum term of such person's sentence only. The maximum term to be fixed by the court shall be the maximum provided by law for the crime of which such person was convicted, . . .

"Within six (6) months after the admission of such convicted person to the penitentiary or the reformatory . . . the board . . . shall fix the duration of his or her confinement . . ."

It is claimed by appellant that this is an *ex post facto* law and, therefore, violative of Art. I, § 10, of the United States constitution, which, among other things, prohibits a state from passing such a law.

In *Malloy v. South Carolina,* 237 U. S. 180, 35 S. Ct. 507, it was held that the constitutional inhibition on *ex post facto* laws was intended to secure substantial personal rights against arbitrary and oppressive legislative action and not to obstruct mere alterations in conditions deemed necessary for the orderly infliction of humane punishment, citing *Rooney v. North Dakota,*

196 U. S. 319, 25 S. Ct. 264. It was further held that a law is not *ex post facto* within the constitutional prohibition that mollifies the rigor of the criminal law; but only those laws that create or aggravate the crime or increase the punishment or change the rules of evidence for the purpose of conviction fall within the prohibition, citing and quoting *Calder v. Bull,* 3 Dall. 386.

The amending act does not change or inflict a greater punishment than the law in force when the alleged crime was committed, for the court could, under the law in force at that time, pronounce a maximum sentence of not more than fifteen years. The minimum and maximum punishments remain the same as before the enactment of the act of 1935. To the same effect upon this amendment to our parole law, see *Andrus v. McCauley et al.,* as yet unreported, in the district court for the eastern district of Washington, by Kavanaugh, District Judge, recently filed.

We are obliged to conclude that chapter 114, Laws of 1935, p. 308, does not violate the prohibition contained in the Federal constitution regarding the passage of *ex post facto* laws.

We find no prejudicial error in the trial of the case, and the judgment is affirmed.

ALL CONCUR.