[No. 62143-2-I.    Division One.    December 14, 2009.]

THE STATE OF WASHINGTON, *Appellant*, v. KURT R. MADSEN, *Respondent*.

*Robert M. McKenna, Attorney General,* and *Alex A. Kostin, Assistant,* for appellant.

*Lila J. Silverstein* (of *Washington Appellate Project*), for respondent.

¶1 BECKER, J. — This appeal concerns a statute directing that when an inmate violates the conditions of community custody a third time, he must be sent back to prison for the remainder of his original sentence. The statute became effective before petitioner Kurt Madsen committed his third community custody violation, but after he committed the crimes for which he was originally sentenced. Punishment for a community custody violation is attributed to the crimes for which a defendant was originally convicted, not to the violation. Because the statute increased the measure of punishment for Madsen's original conviction, the trial court properly ruled that applying it to Madsen would violate the ex post facto clause.

¶2 Madsen was convicted in August 2006 on three counts of felony violation of a no-contact order (domestic violence), based on three telephone calls he placed on September 2, 2004.[1] On August 9, 2006, he was sentenced to confinement in prison for 18 months, to be followed by a term of community custody.

¶3 When serving a term of community custody, an offender is subject to certain conditions. Violating the condi-

---

[1] The facts underlying Kurt Madsen's conviction are presented in the unpublished opinion by which this court affirmed his conviction on direct appeal. *State v. Madsen,* noted at 143 Wn. App. 1028, 2008 WL 625282, 2008 Wash. App. LEXIS 578. We rejected his arguments that he should have been allowed to proceed pro se and that the telephone calls should have been found to encompass the same criminal conduct. The Supreme Court accepted Madsen's petition for review and heard argument on September 15, 2009.

tions of community custody may lead to sanctions being imposed by the Department of Corrections. RCW 9.94A.737.

¶4 Madsen was released to community custody on December 21, 2006, after serving less than five months of his 18-month term of confinement. He violated the conditions of community custody twice[2] before July 2007. In July 2007 the provision that is the subject of this appeal went into effect. LAWS OF 2007, ch. 483, § 305. It was codified as RCW 9.94A.737(2). The legislature has since revised the statute by deleting the provision. LAWS OF 2008, ch. 231, § 20. We shall refer to the provision at issue in this case, former RCW 9.94A.737(2), as the 2007 statute.

¶5 The 2007 statute made it mandatory that when an offender has committed a third violation of community custody, the Department "shall" return that offender to prison to serve the remainder of the sentence in total confinement:

> If an offender has not completed his or her maximum term of total confinement and is subject to a third violation hearing for any violation of community custody and is found to have committed the violation, the department shall return the offender to total confinement in a state correctional facility to serve up to the remaining portion of his or her sentence, unless it is determined that returning the offender to a state correctional facility would substantially interfere with the offender's ability to maintain necessary community supports or to participate in necessary treatment or programming and would substantially increase the offender's likelihood of reoffending.

Former RCW 9.94A.737(2) (the 2007 statute).

¶6 On April 23, 2008, a hearings officer for the Department found that Madsen had violated the conditions of community custody a third time. Madsen's community corrections officer recommended a sanction of 60 days' confinement. This was an authorized sanction under the

---

[2] The record does not inform us as to what sanctions were imposed for Madsen's first two violations of community custody.

law as it existed before the 2007 statute went into effect. But the hearings officer applied the 2007 statute and ordered that Madsen had to serve the remainder of his sentence in prison.

¶7  On June 12, 2008, Madsen filed a motion under CrR 7.8(b) in King County Superior Court, asserting that applying the 2007 statute to him violated the ex post facto clause. The court agreed and found that, but for the hearings officer's erroneous reliance on the 2007 statute, "it is highly probable that a sixty day sanction would have been imposed." The Department does not challenge this finding. Madsen had already served more than 60 days for his third violation. Accordingly, the court ordered the Department to release him from prison. This appeal followed.

¶8  Initially, the Department contends that the trial court lacked jurisdiction to consider Madsen's motion. The court considered the motion under CrR 7.8(b). That rule specifically allows the court to relieve a party "from a final judgment, order, or proceeding." CrR 7.8(b). According to the Department, this language limits the trial court to amending a judgment and sentence and shows that the superior court does not have the power to grant post-conviction relief. The Department argues that the only proper means for an offender to appeal the result of a community custody hearing is a personal restraint petition filed in this court under RAP 16.4(b). The Department's interpretation of the rule is contradicted by authority. "The Supreme Court, Court of Appeals and superior court have concurrent jurisdiction in habeas corpus proceedings wherein postconviction relief is sought." *Toliver v. Olsen*, 109 Wn.2d 607, 609, 746 P.2d 809 (1987). A motion in the trial court under CrR 7.8(b) is the functional equivalent of a personal restraint petition in the Court of Appeals. *See In re Pers. Restraint of Becker*, 143 Wn.2d 491, 499, 20 P.3d 409 (2001). The superior court did not err by considering Madsen's motion under CrR 7.8(b).

¶9  On the merits, the Department contends the trial court erred when it concluded that applying the 2007

statute to Madsen violated the ex post facto clause. This court reviews a lower court's ruling on a CrR 7.8 motion for an abuse of discretion. *State v. Hardesty*, 129 Wn.2d 303, 317, 915 P.2d 1080 (1996). If the court applies the wrong legal standard or bases its ruling on an erroneous view of the law, it abuses its discretion. This court reviews underlying questions of law de novo. *State v. Lord*, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007).

¶10 The ex post facto clause, U.S. CONST. art. I, § 10, bars application of a law "that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. (Dall.) 386, 390, 1 L. Ed. 648 (1798), *quoted in Johnson v. United States*, 529 U.S. 694, 699, 120 S. Ct. 1795, 146 L. Ed. 2d 727 (2000). "A law violates the ex post facto clause if it: (1) is substantive, as opposed to merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) disadvantages the person affected by it." *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 185, 814 P.2d 635 (1991) (citing *Collins v. Youngblood*, 497 U.S. 37, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990)). In this case, the Department admits that former RCW 9.94A.737(2) is substantive, that is, "criminal" or "punitive." *See Forster v. Pierce County*, 99 Wn. App. 168, 179-80, 991 P.2d 687 (2000). The Department contends, however, that as applied to Madsen the statute is not retrospective or disadvantageous.

¶11 Statutes generally operate prospectively to give fair warning that a violation will result in a specific consequence. *State v. Pillatos*, 159 Wn.2d 459, 470, 150 P.3d 1130 (2007). Ex post facto problems are avoided when a defendant "is subject to the penalty in place the day the crime was committed. After the fact, the State may not increase the punishment." *Pillatos*, 159 Wn.2d at 475.

¶12 Generally, there is no ex post facto problem when a sentencing statute directs the use of an offender's prior convictions to enhance the sentence for a crime committed after the statute goes into effect. *See, e.g., State v. Scheffel*, 82 Wn.2d 872, 878-79, 514 P.2d 1052 (1973) (Washington

Habitual Traffic Offenders Act, chapter 46.65 RCW, was not ex post facto because it applied to petitioners only if they committed a third crime after the law went into effect); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 363, 759 P.2d 436 (1988) (use of defendant's prior juvenile convictions to determine his sentence for an adult crime did not constitute additional punishment for the prior conduct); *State v. Angehrn*, 90 Wn. App. 339, 952 P.2d 195 (1998) (rejecting ex post facto challenge to the Persistent Offender Accountability Act because the mandatory sentence of life imprisonment is triggered only upon the third conviction for a most serious offense and statute was enacted before defendant's third most serious offense). In all these cases, the mandatory penalty was in place the day the offender committed the crime that triggered it. The statute did not retroactively increase the penalty for the prior offense.

¶13 The Department contends that the new mandatory penalty for a third community custody violation should be analyzed in the same way as the sentencing laws in the cases cited above. Under the Department's theory of the case, returning Madsen to prison is a sanction for violating community custody conditions after the new statute went into effect.

¶14 The Department, however, fails to come to terms with *Johnson*, one of two United States Supreme Court cases that are dispositive in this case. *Johnson* rejected the rationale urged by the Department and held that when a punishment is imposed for violating conditions of supervised release, the punishment is attributed to the original offense. Therefore, the law authorizing the punishment cannot be applied to a person whose original offense occurred before the law was enacted.

¶15 *Johnson* involved a provision of the federal Sentencing Reform Act of 1984. Pub. L. No. 98-473, 98 Stat. 1987. That act, similar to Washington's Sentencing Reform Act of 1981, chapter 9.94A RCW, eliminated parole in favor of supervised release, a form of postconfinement monitoring overseen by the sentencing court. *Johnson*, 529 U.S. at 696-97. Under section

3583(e)(3) of the federal act, one option for dealing with an offender who violated a condition of supervised release was to revoke the term of supervised release and require the person to serve all or part of the term of supervised release in prison without credit for time previously served in that status. It was not readily apparent from the text of section 3583(e)(3) that the offender could then be ordered to start a new term of supervised release. In 1994, a newly-enacted provision, section 3583(h), gave district courts the explicit authority to impose a new term of supervised release in this situation.

¶16 Cornell Johnson committed a felony in October 1993. He was given a prison sentence, to be followed by a three-year term of supervised release. Upon release from prison in August 1995, he began serving the three-year term of supervised release. Seven months into that term, he violated the conditions of supervised release. The district court revoked his supervised release and imposed a prison term of 18 months. The court additionally ordered that after the 18-month prison term, Johnson would begin a new 12-month term of supervised release. For this last order—the new term of supervised release—the district court did not specify whether it was relying on section 3583(e)(3), which had long been in effect, or section 3583(h), the 1994 statute.

¶17 Johnson appealed and challenged the new term of supervised release as an ex post facto application of subsection (h). The Sixth Circuit rejected that argument, having already decided that subsection (h) did not alter the punishment for a defendant's original offense and instead imposed punishment for a defendant's violating the conditions of supervised released after subsection (h) was enacted. *United States v. Johnson*, 181 F.3d 105, 1999 WL 282679, at *1, 1999 U.S. App. LEXIS 8558, at *3 (6th Cir.) (citing *United States v. Abbington*, 144 F.3d 1003, 1005 (6th Cir.), *cert. denied*, 525 U.S. 933 (1998)).

¶18 Johnson appealed. The Supreme Court granted certiorari to resolve a split among the circuits. The govern-

ment disagreed with the Sixth Circuit's position on subsection (h) and asked the court instead to affirm by broadly interpreting subsection (e)(3) as authorizing the imposition of a second term of supervised release. The Court decided that the Sixth Circuit's position on subsection (h) was erroneous. The Court held that postrevocation sanctions should be treated as part of the penalty for the initial offense, not as a penalty for violating conditions of supervised release:

> While this understanding of revocation of supervised release has some intuitive appeal, the Government disavows it, and wisely so in view of the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release. Although such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties. For that matter, such treatment is all but entailed by our summary affirmance of *Greenfield* v. *Scafati*, 277 F. Supp. 644 (Mass. 1967) (three-judge court), summarily aff'd, 390 U. S. 713 (1968), in which a three-judge panel forbade on *ex post facto* grounds the application of a Massachusetts statute imposing sanctions for violation of parole to a prisoner originally sentenced before its enactment. We therefore attribute postrevocation penalties to the original conviction.

*Johnson*, 529 U.S. at 700-01 (citations omitted). The Court ultimately affirmed the imposition of the new term of supervised release based on subsection (e)(3), as advocated by the government.

¶19 The cases the Department relies on here, such as *Scheffel*, *Williams*, and *Angehrn*, are not undermined by *Johnson*. A statute setting the severity of a penalty for a

defendant who has prior convictions does not inherently pose an ex post facto problem when applied to a defendant whose prior convictions were for behavior occurring before the statute was enacted. The language quoted above from *Johnson* applies when an offender who has served a prison term for the prior conviction is then punished for violating conditions of release. Under *Johnson* such punishment is attributed to the prior conviction, not to the violation. When this is done in Madsen's case, it becomes clear that the 2007 statute was applied to him retrospectively, i.e., it was applied to events (the telephone calls he illegally made in 2004) that occurred before its enactment.

¶20 The Department asserts that the 2007 statute is entirely different because it applies to a community custody violation, whereas the statute in *Johnson* was intended to punish offenders for committing a new crime. This attempt at distinction fails. Supervised release in the federal system and community custody in Washington are systems designed to keep an offender under control after release from prison through monitoring the offender's compliance with specified conditions. As the paragraph from *Johnson* quoted above indicates, in the federal system—just as in Washington—an offender may be sanctioned for conduct that violates conditions even though the conduct does not, in itself, amount to a new crime.

¶21 The Department also claims that the 2007 statute did not increase the punishment for Madsen's original offense and, therefore, did not disadvantage him. The federal criminal statute reviewed in *Johnson* authorized a district court to impose a new postrevocation penalty consisting of a second term of supervised release. Our 2007 statute, in contrast, merely required that the offender be returned to prison to complete the term of confinement originally ordered. As the Department points out, before the 2007 statute went into effect, the Department already had statutory authority to send any community custody violator back to prison to serve the remainder of the sentence.

> If an offender violates any condition or requirement of community custody, the department may transfer the offender to a more restrictive confinement status to serve up to the remaining portion of the sentence, less credit for any period actually spent in community custody or in detention awaiting disposition of an alleged violation and subject to the limitations of subsection (3) of this section.

Former RCW 9.94A.737(1). The above-quoted statute was in effect when Madsen committed his felony offenses in 2004. But before July 2007, the sanction of return to prison was optional rather than mandatory, no matter how many violations of community custody conditions the offender committed. It is undisputed that if the hearings officer had not applied the mandatory 2007 statute, it is "highly probable" that Madsen would have been sent back to prison for only 60 days.

¶22 This distinction brings us to the second dispositive United States Supreme Court opinion, *Lindsey v. Washington*, 301 U.S. 397, 57 S. Ct. 797, 81 L. Ed. 1182 (1937). Under *Lindsey*, a statute increases punishment if it makes mandatory a penalty that formerly was optional.

¶23 The law in effect when the Lindsey defendants committed grand larceny prescribed that the court would impose a maximum sentence of 15 years and a minimum sentence of not less than 6 months. The law in effect when they were sentenced, part of new legislation creating a parole board, required that the court impose a mandatory 15-year sentence.

¶24 The Lindseys appealed. The Supreme Court of Washington declared that the amended statute did not inflict greater punishment because the maximum punishment remained the same. Under the law in force when the larceny was committed, the court could pronounce a maximum sentence of not more than 15 years. *State v. Lindsey*, 187 Wash. 364, 371, 61 P.2d 293 (1936). The United States Supreme Court disagreed with this analysis and ruled that sentencing the defendants under the new statute was an ex post facto violation:

> The effect of the new statute is to make mandatory what was before only the maximum sentence. Under it the prisoners may be held to confinement during the entire fifteen year period. Even if they are admitted to parole, to which they become eligible after the expiration of the terms fixed by the board, they remain subject to its surveillance and the parole may, until the expiration of the fifteen years, be revoked at the discretion of the board or canceled at the will of the governor. It is true that petitioners might have been sentenced to fifteen years under the old statute. But the *ex post facto* clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed. The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer. It is for this reason that an increase in the possible penalty is *ex post facto*, regardless of the length of the sentence actually imposed, since the measure of punishment prescribed by the later statute is more severe than that of the earlier.

*Lindsey*, 301 U.S. at 400-01 (citations omitted); *see also Miller v. Florida*, 482 U.S. 423, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987) (petitioner was substantially disadvantaged by retrospective application of revised sentencing guidelines, which foreclosed his ability to challenge imposition of sentence longer than his presumptive sentence under old law). In *Miller*, the State argued that the change in guidelines was not disadvantageous because the prisoner could not show definitively that he would have gotten a lesser sentence under the old law. That is the same argument the Department makes in the present case, but as the Supreme Court concluded in *Miller*, it is foreclosed by *Lindsey*. 482 U.S. at 432; *see also California v. Delgado*, 140 Cal. App. 4th 1157, 45 Cal. Rptr. 3d 501, 508-11 (2006) (application of statute that removed trial court's discretion to impose a shorter term and imposed mandatory community service conditions violated ex post facto prohibitions).

¶25 Under *Lindsey*, sentencing Madsen under the 2007 statute was an ex post facto violation. Under the statute in effect when Madsen committed his original offenses, the

Department had the discretion to return him to prison for the rest of his term on his first violation of the conditions of community custody or any violation thereafter. Under the 2007 statute, the Department lost that discretion: it became mandatory that an offender be returned to prison for a third violation. The prescribed measure of his punishment became more severe.

¶26 The Department suggests that applying the 2007 statute to Madsen does not violate the ex post facto clause because he had fair notice under the earlier statute that his community custody status could be permanently revoked for even his first or second violation. It is true that giving fair notice is a central concern behind the ex post facto clause. *Miller*, 482 U.S. at 430. But notice of possible punishment does not ensure that the retrospective application of a law will not violate ex post facto prohibitions. The "sole determination of whether a law is 'disadvantageous' is whether the law *alters the standard of punishment* which existed under prior law." *State v. Ward*, 123 Wn.2d 488, 498, 869 P.2d 1062 (1994). As the *Lindsey* Court held, a law is ex post facto if its effect is to make mandatory a measure of punishment that previously was discretionary. "It is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term." *Lindsey*, 301 U.S. at 401-02. Similarly here, under the law in effect when Madsen committed his crimes, he had the opportunity to receive a penalty for his third community custody violation that was less onerous than being returned to confinement for the remainder of his term. Application of the 2007 statute would have deprived Madsen of that opportunity.

¶27 The Department's position is not supported by its citation to *Rise v. Oregon*, 59 F.3d 1556 (9th Cir. 1995), and *In re Personal Restraint of Forbis*, 150 Wn.2d 91, 74 P.3d 1189 (2003). The provisions involved in those cases—a statute requiring felons to submit blood samples for a DNA (deoxyribonucleic acid) data bank and a policy requiring

attendance at anger management classes as a condition of retaining earned-release credits—were held not to be punitive. *Rise*, 59 F.3d at 1562; *Forbis*, 150 Wn.2d at 100. Here, because it is undisputed that the 2007 statute is punitive, the only question is whether it altered the standard of punishment.

¶28 Following *Johnson*, we conclude that the penalty imposed upon Madsen was punishment attributable to his original offense. Following *Lindsey*, we conclude the 2007 statute altered the standard of punishment that existed when Madsen committed his original offense. The Department erred by applying the 2007 statute to Madsen because the effect of doing so violated the prohibition against ex post facto laws. In view of this conclusion, it is unnecessary to address the Department's further argument that the legislature actually intended the new statute to apply retrospectively. *See Smith v. Doe*, 538 U.S. 84, 92, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003) ("If the intention of the legislature was to impose punishment, that ends the inquiry.").

## ADDITIONAL EVIDENCE

¶29 The Department has moved to supplement the record on appeal with two "exhibits." One is a declaration of the hearings unit administrator to the effect that before the 2007 statute went into effect, the Department was aware of its authority to return a violator to prison for the remainder of the sentence after even a single community custody violation. The Department states that this document should be included in the record because it "bears directly on the issue of the Department's having authority at the time of Mr. Madsen's committing his crime to return him to prison to serve the rest of his term in confinement." The second document is a chronological history of departmental interactions with Madsen during his time on community custody. The Department states that this document "shows that considering the severity of Mr. Madsen's violations, the Department could have sent him to confinement to serve

the rest of his term there" prior to the effective date of the 2007 statute. The Department cites RAP 9.10 as authority for adding these materials to the record.

¶30 RAP 9.10 allows a party to supplement the record transmitted to this court with materials that are already part of the record that was before the trial court. The materials the Department wishes to add to the record were not before the trial court. The request is thus an attempt to submit additional evidence rather than to correct or complete the record of proceedings below. The submission of additional evidence on review is governed by RAP 9.11, not by RAP 9.10.

¶31 Additional evidence is seldom taken on appeal and only if the strict criteria of RAP 9.11 are met. *E. Fork Hills Rural Ass'n v. Clark County*, 92 Wn. App. 838, 845-46, 965 P.2d 650 (1998). The Department does not cite RAP 9.11 and does not attempt to satisfy its criteria. The additional evidence is unnecessary and irrelevant; it is the previous statute that shows that the hearings officer could have imposed the same penalty on Madsen without the 2007 statute. Also, no reason is given why the Department did not make its exhibits part of the record in the trial court. The motion to supplement the record is denied.

¶32 The decision of the trial court is affirmed.

SCHINDLER, C.J., and APPELWICK, J., concur.

Review denied at 168 Wn.2d 1034 (2010).