[No. 41401-5-II.   Division Two.   July 24, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM NELSON
SCHENCK III, *Appellant*.

634

636

*Casey Grannis* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Susan I. Baur, Prosecuting Attorney*, and *Sean M. Brittain, Deputy*, for respondent.

¶1 Worswick, C.J. — William Schenck appeals a 2010 order finding that he violated the terms of his community placement by (1) residing in Cowlitz County instead of Thurston County and (2) failing to report to his community corrections officer in Thurston County; this order imposed 20 days' confinement for Schenck's violation. On appeal, Schenck argues that the 2007 statutory "county of origin"[1] condition on community placement does not apply to him because it is not retroactive and, alternatively, if the 2007 statute is retroactive, it violates prohibitions on ex post facto laws.[2] The State argues that Schenck's appeal is collaterally estopped because our Supreme Court previously ruled on his case. Finding no error, we affirm.

## FACTS

### I. Schenck's Crime and Sentence

¶2 Schenck was convicted in May 2002 in Cowlitz County for solicitation to commit first degree murder, committed in 2000. Schenck's 2002 judgment and sentence imposed 120 months in custody, followed by 24 months of

---

[1] Codified at RCW 72.09.270(8).

[2] In a statement of additional grounds (SAG), Schenck further argues that (1) the term of his community placement should be 12 months rather than 24, (2) there are no conditions on his community placement because he is on postrelease supervision rather than community custody, (3) his community placement should be subject only to certain conditions explicitly stated on his judgment and sentence, and (4) his community placement should not be tolled during this litigation and appeal. Because these issues are unique to Schenck and because his term of community placement expired on May 7, 2012, his SAG presents only moot issues. Wash. Court of Appeals oral argument, *State v. Schenck*, No. 41401-5-II (Apr. 13, 2012), at 9 min., 55 sec.—12 min., 30 sec. (on file with court). Consequently, we dismiss Schenck's SAG. *State v. Sansone*, 127 Wn. App. 630, 636, 111 P.3d 1251 (2005).

community placement.[3] The judgment and sentence placed several conditions on Schenck's period of community placement, including, "The residence location and living arrangements are subject to the prior approval of [the Department of Corrections] while in community placement . . . ." Clerk's Papers (CP) at 55. Schenck began serving his sentence on May 5, 2002.[4]

¶3 In 2007, the legislature enacted a law requiring the Department of Corrections (Department) to place offenders in their "county of origin" for their community placement.[5] RCW 72.09.270(8). The 2007 statute defines "county of origin" as "the county of the offender's first felony conviction in Washington." RCW 72.09.270(8)(c). But, under certain circumstances, the 2007 statute allows the Department to return an offender to a county other than the offender's "county of origin" for his or her community placement. RCW 72.09.270(8)(a)-(b). Specifically, the Department may not release an offender to community placement to a county other than his

county of origin *unless* it is determined by the [D]epartment that the offender's return to his or her county of origin would be inappropriate considering any court-ordered condition of the offender's sentence, victim safety concerns, negative influences on the offender in the community, or the location of family or other sponsoring persons or organizations that will support the offender.

RCW 72.09.270(8)(a) (emphasis added).

¶4 Schenck was convicted in Cowlitz County, but his "county of origin" as defined by the 2007 statute is Thurston

---

[3] Community placement refers to the period of time during which an offender is subject to conditions of community custody and/or postrelease supervision. Former RCW 9.94A.030(6) (1999).

[4] We affirmed Schenck's conviction and 120-month sentence on direct appeal. *State v. Schenck*, noted at 119 Wn. App. 1037 (2003).

[5] For simplicity, we refer to RCW 72.09.270 as the 2007 statute.

County.[6] RCW 72.09.270(8)(c). Although Schenck's 1991 victim still resides in Thurston County, she reported to department officials that she is comfortable with Schenck returning to the area. Conversely, the victim in Cowlitz County reported to department officials that she is concerned about Schenck returning there.

## II. SCHENCK'S POSTCONVICTION MOTIONS AND APPEALS

¶5 In 2008, while still incarcerated, Schenck filed a motion in Cowlitz County, requesting several types of relief, arguing, inter alia, that the 2007 statute's "county of origin" requirement does not apply to him. The superior court transferred Schenck's motion to us for consideration as a personal restraint petition (PRP).[7] We dismissed Schenck's PRP, holding that "[n]one of [his] claims ha[d] merit" and that we could not review Schenck's claim that the 2007 statute did not apply to him because he was still incarcerated and had not proposed a postrelease supervision address to the Department. CP at 71-73. Thus, we dismissed his PRP on ripeness grounds.

¶6 Schenck sought discretionary review of our dismissal of his PRP. A commissioner of the Washington State Supreme Court denied review. That court's commissioner further stated that Schenck had not been adversely affected by the 2007 statute because he had not proposed a specific postrelease address and, thus, the Department had not rejected a proposed postrelease address. Further, the commissioner stated, "[P]reapproval of Mr. Schenck's residence address has always been a condition of his release into community placement. Former RCW 9.94A.120(9)(b)(v) (1999). Requiring the residence to be in a particular county does not increase the quantum of punishment for the crime." CP at 64.

---

[6] Schenck was convicted of first degree child molestation in Thurston County in 1991.

[7] RAP 16.5.

III. Schenck's Release

¶7 The Department began working with Schenck on his release plan in early 2009. During this process, the Department noticed Schenck was interested in being released to Cowlitz County, but it informed Schenck that it had concerns for the safety of his victim there and, thus, it would not grant him an exception to the "county of origin" condition imposed by the 2007 statute. Schenck never submitted a proposed postrelease address for department approval, as required. Instead, Schenck refused to cooperate with the Department after it informed him that it would return him to Thurston County for community placement, and he refused to answer department inquiries about any alternatives.

¶8 Schenck completed his 120-month sentence in May 2010. Schenck's assigned community corrections officer (CCO), Michael Boone, reviewed the conditions of his community placement with Schenck before his release from prison. Specifically, Boone informed Schenck that he needed to remain in Thurston County, get written permission from his CCO before leaving Thurston County, notify his CCO before changing residences or jobs, "perform affirmative acts necessary to monitor" his compliance with court orders and department conditions, and not consume controlled substances and alcohol. 1 Report of Proceedings (RP) at 14. On May 5, Boone picked Schenck up from prison and took him to Thurston County.

¶9 Schenck spent his first night on community placement at a Salvation Army shelter. The following night, however, the Salvation Army shelter turned Schenck away and he spent much of the night outside the Department's Olympia office. Schenck reported to the Thurston County department office as required on the following day, May 7. Schenck claims he spent all day May 7 at the Department's Olympia office and that no one would help him find shelter.

Thereafter, Schenck decided to use the last of his money to purchase a bus ticket to Cowlitz County. In Cowlitz County, a veterans' association assisted him in securing more permanent lodgings.

IV. PETITION FOR TEMPORARY RESTRAINING ORDER AND VIOLATION HEARING

¶10 Schenck did not report to the Department's Thurston County office after May 7. Instead, acting pro se, Schenck petitioned the Cowlitz County Superior Court for a temporary restraining order (TRO) prohibiting the Department from imposing geographic restrictions on him. The following day, the Department petitioned the Cowlitz County Superior Court for an order modifying Schenck's judgment and sentence and sentencing him to 30 days in jail for violating the conditions of his community placement by failing to report to his supervising CCO since early May. After hearings on Schenck's TRO petition, the superior court denied his TRO and found that it did not have jurisdiction to consider the matter; rather, it found that Schenck should bring his action as a PRP in this court. Additionally, the trial court allowed Schenck to remain in Cowlitz County pending resolution of the Department's postrelease supervision violation proceedings.

¶11 During the violation hearings, Schenck agreed that he had failed to report to the Department's Thurston County office. Schenck also acknowledged that the Department had informed him that he needed to reside in Thurston County during his community placement, that he did not request prior approval to leave Thurston County on May 7, and that he did not have department approval to reside in Cowlitz County. Schenck's assigned CCO testified during these violation hearings that he never approved Schenck's residence in Cowlitz County and that the Department sought to connect Schenck with services in Thurston County but Schenck had refused to cooperate. RP at 26-27, 60.

¶12 At the end of these hearings, the trial court reiterated that it did not have jurisdiction to address whether Schenck is properly subject to postrelease supervision; rather, the trial court ruled that Schenck should raise the issue in a PRP. The trial court did find, however, that Schenck willfully violated the conditions of his community placement by failing to report to the Department as ordered in the conditions of his community placement. On October 28, the trial court sentenced Schenck to 20 days' confinement in Cowlitz County Jail for his May 2010 community placement violation and ordered him to report to the Department as ordered upon his release from jail. Schenck appeals this order finding him in violation of his community placement and sentencing him to 20 days in jail.[8]

## ANALYSIS

### I. STANDARD OF REVIEW

¶13 Schenck's appeal presents issues of collateral estoppel, retroactive application of a statute, and the prohibition of ex post facto laws, all questions of law. *Lemond v. Dep't of Licensing*, 143 Wn. App. 797, 803, 180 P.3d 829 (2008); *State v. Pillatos*, 159 Wn.2d 459, 469-75, 150 P.3d 1130 (2007). We review questions of law de novo. *Pillatos*, 159 Wn.2d at 469. Accordingly, our review is de novo.

---

[8] At oral argument on April 13, 2012, Schenck and the State informed us that Schenck had already served the 20-day confinement imposed for this violation and that his term of community placement would expire on May 7, 2012. Wash. Court of Appeals oral argument, *supra*, at 9 min., 55 sec.—12 min., 30 sec. But before Schenck's term of community placement expired, the Department initiated additional proceedings alleging he violated the conditions on his community placement. That violation is currently pending in superior court. Wash. Court of Appeals oral argument, *supra*, at 12 min., 30 sec.—14 min., 22 sec. Although the record before us contains no reference to any pending violation, Schenck and the State agree that he is currently subject to a pending violation of the terms of his community placement. Wash. Court of Appeals oral argument, *supra*, at 11 min., 14 sec.—14 min., 22 sec. We accept Schenck's and the State's assertions. Accordingly, rather than disposing of Schenck's appeal as moot, we address the arguments he presents on appeal to guide the trial court in ruling on Schenck's pending community placement violation and because his appeal presents issues of public importance. Wash. Court of Appeals oral argument, *supra*, at 11 min., 14 sec.—14 min., 22 sec.; *State v. Veazie*, 123 Wn. App. 392, 397, 98 P.3d 100 (2004).

## II. Application of the "County of Origin" Condition Is Properly before Us

¶14 As an initial matter, the parties dispute whether we can reach the merits of the Department's application of the 2007 statute's "county of origin" condition on Schenck's community placement. Schenck argues that we should reach the merits because no other tribunal has addressed this issue and, thus, it is not subject to a final judgment on the merits. The State counters that we should not address this issue because the Washington Supreme Court adjudicated it. We agree with Schenck that this issue has not yet been subject to a final judgment on its merits.

¶15 When it applies, collateral estoppel bars relitigation of an issue adjudicated in an earlier suit and already decided on its merits in later litigation between the same parties. *State v. Eggleston*, 164 Wn.2d 61, 71-72, 187 P.3d 233 (2008). Collateral estoppel applies in criminal cases only if (1) the issue presented is identical to an issue decided in an earlier adjudication (2) between the same parties, (3) the earlier adjudication decided that issue in a final judgment on the merits, and (4) applying collateral estoppel to bar relitigation of that issue will not " 'work an injustice' " against the party raising the issue. *Eggleston*, 164 Wn.2d at 72 (quoting *State v. Tili*, 148 Wn.2d 350, 361, 60 P.3d 1192 (2003)). Collateral estoppel, thus, provides certainty and respects the finality of a judgment after a party had a full and fair opportunity to litigate that issue to its conclusion on its merits. *Petcu v. State*, 121 Wn. App. 36, 71, 86 P.3d 1234 (2004).

¶16 Dismissal of a PRP on ripeness grounds is a dismissal on procedural grounds and, accordingly, is not a final judgment on the merits. *See In re Pers. Restraint of Stoudmire*, 145 Wn.2d 258, 263, 36 P.3d 1005 (2001); *see also To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001). Where an appellate court dismisses a PRP

on procedural grounds, it does not consider the merits of the issues presented in that petition. *In re Pers. Restraint of Hankerson*, 149 Wn.2d 695, 704, 72 P.3d 703 (2003). Moreover, denial of discretionary review does not generally preclude later review of an issue. RAP 2.3(c). Where an appellate court dismisses a PRP, review of that dismissal by our Supreme Court is discretionary. RAP 16.14(c).

¶17 Here, we dismissed Schenck's 2008 PRP because application of the 2007 statute's "county of origin" condition on community placement to him was not yet ripe for appellate review while Schenck was still in custody. Thus, we did not review this issue on its merits. *Stoudmire*, 145 Wn.2d at 263; *see also To-Ro*, 144 Wn.2d at 411. The State acknowledges that we did not consider this issue because it was not yet ripe. Because we dismissed Schenck's 2008 PRP on ripeness grounds and because our Supreme Court denied discretionary review of that dismissal, there was not a final judgment and collateral estoppel does not apply. Thus, Schenck is not barred from bringing this appeal.[9] Accordingly, we address this issue on its merits.

### III. The 2007 Statute's "County of Origin" Condition Is Not Retroactive as Applied to Schenck

¶18 Schenck argues that the 2007 statutory "county of origin" condition on community placement is not retroactive and therefore cannot apply to his term of community placement because he was convicted of a crime he committed in 2000.[10] We disagree. We hold that the 2007

---

[9] The State also argues that the issue is subject to a final judgment on its merits because after we dismissed Schenck's 2008 PRP, he moved our Supreme Court for review and a commissioner at that court denied review. The State further argues that a panel of that court affirmed the commissioner's decision denying review of this court's dismissal of the PRP and that order constitutes a final decision on the merits. The State's arguments are incorrect because, as we explain above, we dismissed Schenck's 2008 PRP on procedural grounds without reaching the merits.

[10] Schenck relies heavily on *State v. Madsen*, 153 Wn. App. 471, 228 P.3d 24 (2009), to support his arguments that the 2007 statute was retroactive as applied

statute did not apply to Schenck retroactively; rather, it was triggered and properly applied prospectively to him on his 2010 release from prison. Its application did not impair any of Schenck's vested rights in preexisting law or change the legal consequences of his past criminal conduct.[11]

¶19 A statute is impermissibly retroactive as applied if (1) the precipitating event that triggered application of the statute occurred before the statute took effect or (2) the statute impacts an offender's vested rights under preexisting law or "changes the legal effect of 'prior facts or transactions.'" *In re Pers. Restraint of Flint*, 174 Wn.2d 539, 547, 277 P.3d 657 (2012) (internal quotation marks omitted) (quoting *State v. Varga*, 151 Wn.2d 179, 195, 86 P.3d 139 (2004)).

## A. *Precipitating Event*

¶20 A statute is retroactive as applied if the event that triggered its application occurred before the statute came into effect. *Flint*, 174 Wn.2d at 548; *Pillatos*, 159 Wn.2d at 471. In general, criminal statutes apply only prospectively, meaning they apply only to crimes committed after the statute became effective, so that defendants have fair notice of the consequences associated with violating the statute. *Pillatos*, 159 Wn.2d at 470.

---

to him and that applying it to him violates the constitutional prohibition on ex post facto laws. Wash. Court of Appeals oral argument, *supra*, at 4 min., 40 sec.—9 min., 58 sec. But after Schenck submitted his briefing and after we heard oral argument, our Supreme Court filed its opinion in *In re Pers. Restraint of Flint*, 174 Wn.2d 539, 277 P.3d 657 (2012), which reversed *Madsen*. *Flint* controls our analysis.

[11] We note that the legislature may expressly provide for a statute to apply retroactively. *Flint*, 174 Wn.2d at 546. We further note that, even if the legislature does not expressly provide for retroactive application, a statute may apply retroactively if it is remedial. *Flint*, 174 Wn.2d at 546. A statute is remedial if it does not affect substantive rights but, instead, relates to practices, procedures, or remedies. *Flint*, 174 Wn.2d at 546. Although there are some arguments in support of the conclusions that the legislature intended the 2007 statute to apply retroactively to all "offenders" and that the 2007 statute is remedial, those conclusions are not entirely clear. *See* LAWS OF 2007, ch. 483, § 203. Nonetheless, even if the legislature did not intend for the 2007 statute to apply retroactively and even if the 2007 statute is not remedial, we must still determine whether the 2007 statute is retroactive as applied to Schenck. *See Flint*, 174 Wn.2d at 546-47.

¶21 Moreover, a statute is not automatically retroactive if it applies to "conduct that predated its effective date." *Pillatos*, 159 Wn.2d at 471. A statute is not rendered "retroactive merely because some of the requisites for its application" occurred before it took effect. *Flint*, 174 Wn.2d at 548 (quoting *State v. Belgarde*, 119 Wn.2d 711, 722, 837 P.2d 599 (1992)). "Instead, '[a] statute operates prospectively when the *precipitating event* [triggering] operation of the statute occurred after [its] enactment, even when [that] precipitating event *originated in* a situation existing prior to its enactment.'" *Pillatos*, 159 Wn.2d at 471 (second emphasis added) (first alteration in original) (quoting *In re Estate of Burns*, 131 Wn.2d 104, 110-11, 928 P.2d 1094 (1997)); *Flint*, 174 Wn.2d at 548.

¶22 For example, an amended statute that removed department discretion, requiring it to return an offender to confinement for the remainder of his sentence after a third community custody violation, was not retroactive as applied to an offender who was convicted of his underlying crimes before the statute took effect where that offender committed his third community custody violation after the statute took effect. *Flint*, 174 Wn.2d at 548. Even though application of the new statute originated with the offender's conviction before the statute took effect, the precipitating event that triggered application of the statute was the offender's third community custody violation. *Flint*, 174 Wn.2d at 548. Because the statute took effect before the precipitating event, its application was not retroactive as applied to the offender. *Flint*, 174 Wn.2d at 548.

¶23 Here, the 2007 statute stated that the Department shall release offenders to his or her "county of origin" for any term of community placement. RCW 72.09.270(8)(a). Thus, the precipitating event triggering application of the 2007 statute is the offender's release from prison to community placement. Accordingly, as in *Flint*, even though application of the 2007 statute to Schenck had its origins in his 2002 conviction for his 2000 crime, the precipitating

event for the statute was his release from prison in May 2010. Thus, the 2007 statute is prospective as applied to Schenck.

B. *Impact on Vested Rights*

¶24 A new or revised statute does not operate retrospectively simply because it "upsets expectations based on prior law." *Flint*, 174 Wn.2d at 547. Instead, a statute is retroactively applied if it "takes away or impairs a party's vested rights acquired under existing laws." *Flint*, 174 Wn.2d at 547-48; *Pillatos*, 159 Wn.2d at 471. A statute applies retrospectively if its "application increases liability for past conduct or imposes new duties or disabilities with respect to completed transactions." *Flint*, 174 Wn.2d at 547-48. But if the statute does not change the legal effect of the act performed before its effective date, it is not retroactive when applied to that act. *See State v. Humphrey*, 139 Wn.2d 53, 61, 983 P.2d 1118 (1999).

¶25 In *Flint*, preexisting law gave the Department discretion to return an offender to confinement after he violated the terms of community custody; the amended statute stated that the Department "shall" return an offender to confinement after a third community custody violation *"unless"* the Department determined in its discretion that returning the offender to confinement would hinder his progress and increase the likelihood he would reoffend. Former RCW 9.94A.714(1) (2008); 174 Wn.2d at 549-50. Because the Department had discretion to return an offender to confinement following any community custody violation under the law in effect at the time the offender committed the crime, the offender did not have any vested right to remain on community custody and the statutory amendment did not change the level of punishment to which the offender was subject. *Flint*, 174 Wn.2d at 542, 549-50. Thus, the statutory amendment was not retroactive as applied to the offender. *Flint*, 174 Wn.2d at 549-50.

¶26 Similarly here, Schenck committed the crime of solicitation to commit first degree murder in 2000. The law

then in effect allowed a court to impose geographic restrictions on an offender upon his release from custody. Former RCW 9.95.064 (1998); former RCW 9.94A.120(9)(c)(i) (1999). Moreover, the law then in effect also required offenders to comply with all conditions of community placement, including department preapproval of an offender's postrelease address and living situation. Former RCW 9.94A.120(9)(b)(v) (1999).

¶27 Then, in 2007, the legislature enacted the statute at issue here. It provides:

(a) In determining the county of discharge for an offender released to community [placement], the department may not approve a residence location that is not the offender's county of origin *unless* it is determined by the department that the offender's return to his or her county of origin would be inappropriate considering any court-ordered condition of the offender's sentence [or] victim safety concerns . . . .

(b) *If* the offender is *not returned to his or her county of origin*, the department shall provide the law and justice council in the county in which the offender is placed with a written explanation.

(c) For purposes of this section, the offender's county of origin means the county of the offender's first felony conviction in Washington.

RCW 72.09.270(8) (emphasis added). This statute, thus, further defined the geographic conditions the Department could impose on offenders when it released them into community placement. Even though the 2007 statute states that the Department generally "may not" approve a community placement residence location for an offender outside his "county of origin," the Department retains its discretion to release an offender to another county if the offender's "county of origin" is "inappropriate." RCW 72.09-.270(8)(a)-(b). Thus, the 2007 statute did not deprive the Department of its discretion to determine the county into which it would release an offender on community placement.

¶28 Accordingly, the 2007 statute neither made a formerly discretionary penalty mandatory nor imposed additional legal obligations on the conditions of Schenck's community placement. Since the Department had authority to condition Schenck's community placement on his continued compliance and preapproved residence within a specific geographic area, application of the 2007 statute to Schenck is not retroactive.

IV. APPLYING THE 2007 STATUTE'S "COUNTY OF ORIGIN"
CONDITION TO SCHENCK DOES NOT VIOLATE THE
PROHIBITION ON EX POST FACTO LAWS

¶29 Schenck next argues that applying the 2007 statute to him violates the constitutional prohibition on ex post facto laws. We disagree.

¶30 The party disputing the constitutionality of a statute bears the burden of proving that statute is unconstitutional beyond a reasonable doubt. *State v. Enquist*, 163 Wn. App. 41, 45, 256 P.3d 1277 (2011), *review denied*, 173 Wn.2d 1008, 268 P.3d 941 (2012). Accordingly, Schenck bears the burden of proving that applying the 2007 statute to him is unconstitutional beyond a reasonable doubt.

¶31 Both the United States and Washington Constitutions prohibit ex post facto laws. U.S. CONST. art. I, § 10; WASH. CONST. art. I, § 23. The State violates the prohibition on ex post facto laws when it imposes punishment for conduct that was not punishable at the time committed or when it " 'increase[s] the quantum of punishment annexed to the crime' " when committed. *Pillatos*, 159 Wn.2d at 475 (quoting *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 184-85, 814 P.2d 635 (1991)); *see also Flint*, 174 Wn.2d at 545. Consequently, a defendant is properly subject to the punishment in effect at the time he committed the crime and the State cannot increase the amount of punishment thereafter. *Pillatos*, 159 Wn.2d at 475. The focus of our ex post facto inquiry is whether the defendant had notice of

the relevant quantum of punishment at the time of the crime. *Pillatos*, 159 Wn.2d at 475.

¶32 The prohibition against ex post facto laws applies to punitive laws. *State v. Thompson*, 153 Wn. App. 325, 337, 223 P.3d 1165 (2009). But the State does not violate ex post facto prohibitions simply because an offender is at risk of receiving a harsher punishment under procedures enacted after the crime. *Pillatos*, 159 Wn.2d at 476. In order to bring a successful ex post facto claim, a person must show that the law he is challenging (1) is operating retroactively and (2) increases the level of punishment from the level he was subject to on the date of the crime. *Flint*, 174 Wn.2d at 545; *State v. Ward*, 123 Wn.2d 488, 498, 869 P.2d 1062 (1994). As analyzed above, the 2007 statute is not retroactive as applied to Schenck. Consequently, Schenck cannot establish the first requirement of an ex post facto claim. Schenck similarly fails to establish the second requirement of his ex post facto claim because he cannot show that the 2007 statute increased the level of punishment by attaching new consequences to his crime.

¶33 As we discussed above, in *Flint*, the legislature amended a statute to require the Department to return an offender to confinement after a third community custody violation, unless it determined that the offender should not be returned to confinement. *Flint*, 174 Wn.2d at 542-43. But because under the statutory amendment, the Department retained discretion to return an offender to confinement after a third community custody violation, the statutory amendment did not increase the quantum of punishment to which the offender was subject on the date he committed the crime. *Flint*, 174 Wn.2d at 550-51. Accordingly, the amended statute did not violate the prohibition against ex post facto laws because it did not alter the standard of punishment for the offender. *Flint*, 174 Wn.2d at 550-51, 554.

¶34 Here, Schenck's judgment and sentence explicitly requires Schenck to seek prior approval from the Depart-

ment for his "residence *location* and living conditions" during community placement. CP at 55 (emphasis added). Moreover, as we discussed above, the law in effect at the time of Schenck's crime and conviction allowed the Department control over where he resided during his community placement. Thus, contrary to Schenck's assertion, the 2007 statute did not make a formerly discretionary condition on his community placement mandatory. Instead, the Department already had authority to impose geographic restrictions on terms of community placement at the time of Schenck's crime, and Schenck's judgment and sentence reflects that authority by imposing a condition that the Department approve the location of Schenck's residence. The 2007 statute maintained the Department's discretion to approve a residence outside of Schenck's "county of origin" under certain circumstances. RCW 72.09.270(8). Accordingly, applying the 2007 statute's "county of origin" requirement to Schenck did not increase the quantum of punishment to which he was subject and did not violate the prohibition against ex post facto laws. Thus, Schenck's arguments fail.

¶35 We hold that the "county of origin" clause of RCW 72.09.270(8) is neither retroactive nor violative of the ex post facto prohibitions. The trial court did not err in ruling that Schenck violated the terms of his community placement.

¶36 We affirm.

HUNT and QUINN-BRINTNALL, JJ., concur.