[No. 83815-1.   En Banc.]
Argued January 20, 2011.     Decided May 24, 2012.

*In the Matter of the Personal Restraint of* ERIC SHERIDAN
FLINT, *Petitioner.*

540

Lila J. Silverstein (of Washington Appellate Project), for petitioner.

Robert M. McKenna, Attorney General, Anne E. Egeler, Deputy Solicitor General, and Ronda D. Larson, Assistant, for respondent.

¶1 MADSEN, C.J. — Personal restraint petitioner Eric Flint maintains that his return to total confinement pur-

suant to RCW 9.94A.737(2)[1] as a result of repeated violations of conditions of community custody violated the ex post facto clauses of the state and federal constitutions. He filed his personal restraint in the Court of Appeals, which dismissed the petition as frivolous, and we granted discretionary review. We conclude that application of the statute to Mr. Flint did not create an ex post facto problem and accordingly affirm the Court of Appeals' dismissal of Mr. Flint's petition, however, on different grounds.

## FACTS

¶2 In 2002, Mr. Flint was convicted of first degree robbery and possession of a controlled substance, methamphetamine. He was sentenced to a prison term of 100 months to be followed by a term of community custody subject to specified terms and conditions. At the time that Mr. Flint committed his crimes, RCW 9.94A.737(1) (2005) provided that when an offender violated any condition or requirement of community custody, the department had discretion to transfer the offender to more restrictive confinement to serve up to the remainder of his sentence, less credit for time served in community custody.

¶3 On August 27, 2007, Flint was released into the community on earned early release to serve the term of community custody. Shortly before his release, the legislature amended RCW 9.94A.737 to provide that when an offender is released on earned early release and is subject to a third violation hearing for any violation of the conditions of community custody, the Department of Corrections (department or DOC) is to return the offender to total confinement to serve up to the rest of his sentence, with credit for the time served in community custody. Laws of 2007, ch. 483, § 305 (effective July 22, 2007); RCW 9.94A.737(2). The statute

---

[1] This provision is now codified at RCW 9.94A.714(1). Laws of 2008, ch. 231, § 16 (effective Aug. 1, 2009, Laws of 2008, ch. 231, § 61). For convenience, unless otherwise indicated, the statute will be referred to in the present tense as it existed at the time that Mr. Flint committed his community custody violations.

also provides that the offender will not be reincarcerated if the department in its discretion determines that returning the offender to total confinement would interfere with his ability to maintain community supports or participate in treatment or programming and would increase the likelihood of reoffending. RCW 9.94A.737(2).

¶4 After he was transferred to community custody, Mr. Flint repeatedly violated the terms of his community custody. In April and November 2008, and on February 12, 2009, hearings were held to address these violations. Each time, Flint was found guilty of multiple violations. At the third violation hearing, the hearing examiner considered whether to exercise discretion to continue Flint's community custody status rather than returning him to total confinement. Among other things, the hearing examiner considered Flint's risk of violence in light of his continued use of drugs, his failure to engage in drug treatment, and his failure to report as required. The hearing examiner concluded that Flint's behavior posed a risk to the community and that returning him to incarceration would not interfere with his adjustment into the community. Accordingly, Mr. Flint was returned to total confinement to serve the period of earned early release previously applied to his sentence, less the number of days he had served in community custody.

¶5 Flint filed a personal restraint petition in Division Two of the Court of Appeals, arguing that the department lacked authority to return him to prison. Among other things, he maintained that application of the 2007 amendment constituted an ex post facto violation because the statute's effective date occurred after he committed his crimes. The chief judge of Division Two of the Court of Appeals dismissed the petition as frivolous. *See* RAP 16.11(b). Flint then sought discretionary review in this court.

## ANALYSIS

### I. Mootness

■ ¶6 Generally, where direct review of claimed error is not available, a more lenient standard of review applies than where a personal restraint petition follows an appeal from a judgment and sentence. *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 148-49, 866 P.2d 8 (1994). The petitioner can prevail if he can show he is under unlawful restraint as meant by RAP 16.4(c) and (d). Here, however, since Mr. Flint has completed his full sentence, he is not under restraint in the usual sense and as his counsel conceded at oral argument his petition is moot.

■ ¶7 Nevertheless, whether RCW 9.94A.737(2)[2] can be applied to offenders whose original crimes predate the amendment's effective date is a matter of continuing and substantial public interest. Indeed, after Mr. Flint filed his motion for discretionary review, and contrary to Division Two's decision in the present case, Division One of the Court of Appeals decided *State v. Madsen*, 153 Wn. App. 471, 228 P.3d 24 (2009), and held that applying the amendment to offenders whose crimes predate its effective date violates the ex post facto clause. Because of the importance of the question and despite the mootness of this case, we address the issue whether the statute's application to Mr. Flint is an ex post facto violation. *See, e.g., In re Pers. Restraint of Mattson*, 166 Wn.2d 730, 736-37, 214 P.3d 141 (2009) (although the case was technically moot because the offender's maximum term had expired, the court nevertheless interpreted a statute regarding earned early release and decided whether offenders have a protected liberty interest in early release to community custody).

---

[2] As noted, the provision is now found in RCW 9.94A.714(1).

## II. Ex Post Facto Claim

■ ¶8 A claim that application of a law violates the constitutional prohibition against ex post facto laws is a constitutional question that we review de novo. *City of Seattle v. Ludvigsen*, 162 Wn.2d 660, 668, 174 P.3d 43 (2007). There is no contention here that the state constitution's ex post facto clause gives rise to an independent state constitutional analysis, and we accordingly assume that it does not. *State v. Pillatos*, 159 Wn.2d 459, 475 n.7, 150 P.3d 1130 (2007).

■ ¶9 "A law that imposes punishment for an act that was not punishable when committed or increases the quantum of punishment violates the ex post facto prohibition." *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 861, 100 P.3d 801 (2004); *accord Carmell v. Texas*, 529 U.S. 513, 522, 120 S. Ct. 1620, 146 L. Ed. 2d 577 (2000) (quoting *Calder v. Bull*, 3 U.S. (Dall.) 386, 390, 1 L. Ed. 648 (1798)); *Johnson v. United States*, 529 U.S. 694, 699, 120 S. Ct. 1795, 146 L. Ed. 2d 727 (2000); *In re Pers. Restraint of Dyer*, 164 Wn.2d 274, 292, 189 P.3d 759 (2008); *Pillatos*, 159 Wn.2d at 475. To prevail on this kind of ex post facto claim, the petitioner must show that the challenged law operates retroactively, i.e., it applies to conduct that was completed before the law was enacted, and that the challenged law increases the penalty over what it was at the time of the conduct.[3] *Johnson*, 529 U.S. at 699; *see Dyer*, 164 Wn.2d at 293.

---

[3] Mr. Flint says that an ex post facto violation occurs when it "disadvantages" the individual affected by the law. Although this is a term that appeared in earlier United States Supreme Court decisions, which we followed, it has been repudiated by both that court and our own. *See Calif. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995) (explaining that the inquiry established by *Lindsey v. Washington*, 301 U.S. 397, 401, 57 S. Ct. 797, 799, 81 L. Ed. 1182 (1937), *Miller v. Florida*, 482 U.S. 423, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987), and *Weaver v. Graham*, 450 U.S. 24, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981) into whether a law "produces some ambiguous sort of 'disadvantage'" to the offender is inconsistent with the framework established in *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S. Ct. 2715, 2718, 111 L. Ed. 2d 30 (1990) for ex post facto inquiries, i.e., the relevant inquiry is whether the law increases the quantum of punishment that existed under prior law); *State v. Ward*, 123 Wn.2d 488, 498, 869 P.2d 1062 (1994) (making the same course correction).

### A. Whether RCW 9.94A.737(2) Is Retroactive

¶10 Under our general analysis for determining whether RCW 9.94A.737(2) is retroactive, we conclude that the statute was not retroactively applied to Mr. Flint. The statute is not triggered until and unless an offender commits multiple violations of community custody conditions; it does not impair any vested rights, and it does not alter the consequences of prior events or conduct. Mr. Flint contends, however, that a contrary result is dictated by *Johnson*, 529 U.S. 694. We address these issues in turn.

### 1. Whether Legislature Intended Retroactive Application

¶11 We first turn to the question whether the statute is prospective or retroactive. We agree with Mr. Flint that the legislature did not intend that the statute apply retroactively. Statutory amendments are presumed to operate prospectively. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 507-08, 198 P.3d 1021 (2009). The presumption is overcome only when the legislature explicitly provides for retroactive application or the amendment is curative or remedial. *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 223, 173 P.3d 885 (2007); *State v. Cruz*, 139 Wn.2d 186, 191, 985 P.2d 384 (1999). A curative amendment clarifies or makes a technical correction to an ambiguous statute. *Cruz*, 139 Wn.2d at 192. A remedial change relates to practices, procedures, or remedies without affecting substantive or vested rights. *Id.* The legislature has not expressly provided that RCW 9.94A.737(2) is retroactive, and the State has not shown that it is curative or remedial.

¶12 We find no basis for concluding that the 2007 amendment to RCW 9.94A.737 adding subsection 2 was intended to be applied retroactively.

### 2. Whether RCW 9.94A.737(2) Was Retroactively Applied

¶13 Whether the legislature intended the statute to apply retroactively does not end the inquiry because it

remains to be determined whether the statute was in fact applied retroactively to Mr. Flint. Prospective application of a statute occurs when the event that triggers or precipitates operation of the statute takes place after its enactment. *Pillatos*, 159 Wn.2d at 471. Prospective application can be found even if the triggering event originates in a situation that existed before the statute was enacted. *Id.*; *see In re Estate of Burns*, 131 Wn.2d 104, 110-11, 928 P.2d 1094 (1997) ("[a] statute operates prospectively when the precipitating event for operation of the statute occurs after enactment, even when the precipitating event *originated in* a situation existing prior to enactment" (emphasis added)).

¶14 If a statute's application changes the legal effect of " 'prior facts or transactions,' " then the statute's application is more properly characterized as retroactive. *State v. Varga*, 151 Wn.2d 179, 195, 86 P.3d 139 (2004) (quoting *State v. Scheffel*, 82 Wn.2d 872, 879, 514 P.2d 1052 (1973)); *State v. Blank*, 131 Wn.2d 230, 248, 930 P.2d 1213 (1997); *Burns*, 131 Wn.2d at 111; *Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974). However, a statute is not retroactive simply " 'because some of the requisites for its actions are drawn from a time antecedent to its passage.' " *State v. Belgarde*, 119 Wn.2d 711, 722, 837 P.2d 599 (1992) (quoting *Scheffel*, 82 Wn.2d at 879); *see Landgraf v. USI Film Prods.*, 511 U.S. 244, 269, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). Nor does a statute operate retrospectively just because it upsets expectations based on prior law. *Ludvigsen*, 162 Wn.2d at 668; *see Landgraf*, 511 U.S. at 269.

¶15 Expectations based on prior law must be distinguished from vested rights, however. A statute has retroactive effect if it takes away or impairs a party's vested rights acquired under existing laws. *Pillatos*, 159 Wn.2d at 471; *Pape v. Dep't of Labor & Indus.*, 43 Wn.2d 736, 740, 264 P.2d 241 (1953); *In re Estate of Fotheringham*, 183 Wash. 579, 586, 49 P.2d 480 (1935); *see Landgraf*, 511 U.S. at 268-69, 271-72. The same is true if a statute's application increases

liability for past conduct or imposes new duties or disabilities with respect to completed transactions. *See Pillatos,* 159 Wn.2d at 471; *Pape,* 43 Wn.2d at 740-41; *Landgraf,* 511 U.S. at 269.

¶16 These guiding principles have been generally summarized as meaning that to determine whether a statute operates prospectively or retroactively is to

> "ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event."

*Pillatos,* 159 Wn.2d at 471 (quoting *Landgraf,* 511 U.S. at 269-70).

### a. Triggering Event

¶17 None of the principles mentioned above suggest that the statute's application to a person in Mr. Flint's position is a retroactive application. First, the triggering event for application of RCW 9.94A.737(2) is when a defendant is found to have committed violation(s) of conditions of community custody at a third violation hearing. It is at this point that the statute directs that the department "shall return the offender to total confinement in a state correctional facility to serve up to the remaining portion of his or her sentence." RCW 9.94A.737(2). In this case this triggering event has its origins in a situation that existed before RCW 9.94A.737(2) was enacted, in that Flint was convicted, sentenced, and imprisoned for first degree robbery and possession of a controlled substance at the time the legislature amended RCW 9.94A.737(2) to add the challenged provision. But as explained, a law is not retroactive merely because some of the requisites for its application " 'are drawn from a time antecedent to its passage.' " *Belgarde,* 119 Wn.2d at 722 (quoting *Scheffel,* 82 Wn.2d at 879); *see Pillatos,* 159 Wn.2d at 471.

b. No Vested Rights Impaired

¶18 Second, the statute's conflict with Mr. Flint's expectations does not make its application retroactive. Mr. Flint's third community custody violation hearing was held on February 12, 2009. He was found guilty by admission of several violations, including the failure to obey all laws by being in possession of drug paraphernalia on February 2, 2009.[4] Mr. Flint believes that under then-prevailing department practices, he would have been subjected, at most, to a 60-day period of confinement as a sanction for committing the third violation. But as explained, a statute is not retroactive merely because it upsets expectations based on prior law or practices. Mr. Flint's expectations do not lead to the conclusion that RCW 9.94A.737 was applied retroactively in his case. *See Ludvigsen*, 162 Wn.2d 660; *Landgraf*, 511 U.S. at 269.

¶19 A different conclusion would be required if application of the statute took away or impaired any vested rights under prior law. However, under the law prior to enactment of RCW 9.94A.737(2), Mr. Flint clearly had no vested right in remaining in community custody without being subject to a return to total confinement following a violation of the conditions of community custody. At the time that Mr. Flint committed his crimes in January and February 2002, RCW 9.94A.737(1) (1999) provided the department with the discretion to transfer an offender to a more restrictive confinement status if the offender violated "any condition or requirement of community custody."[5] Thus, under the law as it then existed, Flint was subject to reincarceration on

---

[4] Between the time of his release from total confinement on April 2, 2008, and the third hearing, Mr. Flint appeared at three other community custody violation hearings. At the hearings held on April 2, 2008, and November 5, 2008, he was found guilty and sanctioned for multiple violations. In addition, on July 28, 2008, and February 6, 2009, he signed two stipulated agreements admitting he was guilty of other violations.

[5] The statute was formerly codified at RCW 9.94A.205, with the same provision appearing in the statute.

his original offenses for any violation of the conditions of community custody, within the discretion of the department, without a vested right to remain in the community.

### c. No New Consequences for Completed Events

¶20 Third, the statute's application in Mr. Flint's case did not increase any liability for past conduct or impose new duties or disabilities with respect to completed transactions, i.e., it did not attach new consequences to events completed before its enactment. *See Pillatos*, 159 Wn.2d at 471; *Pape*, 43 Wn.2d at 740-41; *Landgraf*, 511 U.S. at 269. Insofar as the original offenses are concerned, the statute does not increase the punishment. Mr. Flint's sentence for the robbery and possession offenses remains the same and no new term may be imposed under the amendment.

¶21 Although Mr. Flint has consistently referred to RCW 9.94A.737(2) as mandating a return to total confinement, in contrast to the former discretionary scheme, the characterization is simply incorrect. Prior to the 2007 amendment, RCW 9.94A.737(1) (2005) provided that upon a violation of any condition or requirement of community custody the department, in its discretion, could transfer the offender to more restrictive confinement to serve up to the remainder of his sentence, less credit for time served in community custody. After the amendment, RCW 9.94A.737(2) states that upon a third violation hearing the offender "shall" be returned to total confinement to serve up to the remainder of the sentence, less credit for time served in community custody, but it then explicitly authorizes the department in its discretion to decline to reincarcerate an offender if it determines that returning him to a "state correctional facility would substantially interfere with [his] ability to maintain necessary community supports or to participate in necessary treatment or programming and would substantially increase the offender's likelihood of reoffending."

¶22 The department thus retains broad if not identical discretion to either reincarcerate the offender or continue

community custody. The department could have chosen in Flint's case not to reincarcerate him upon a conclusion that reincarceration would impair his ability to maintain necessary community supports, participate in necessary treatment or programming, or increase his likelihood of reoffending. Prior to the enactment of the statute, the department had discretion to return him to more restrictive confinement upon a single violation of community custody conditions. Contrary to Flint's claim, RCW 9.94A.737(2) does not make mandatory what was formerly discretionary with regard to the time he serves in total confinement.

¶23 With respect to the community custody violations themselves, RCW 9.94A.737(2) does not affect available punishments.[6]

¶24 Thus, both before and after the statute's effective date, an offender released on community custody has been subject to reincarceration for up to the remainder of the offender's sentence on the convictions for the original offenses if the offender violates the conditions of community custody, with discretion lodged in the department to continue the term of community custody where appropriate. Neither the sentence for the original offenses nor available punishments for the community custody violations themselves have changed under RCW 9.94A.737(2).

¶25 We therefore conclude that RCW 9.94A.737(2) was not in fact applied retroactively to Mr. Flint. (1) The statute was triggered by an event postdating commission of his offenses, i.e., the statute was triggered when he was subject to a third community custody hearing, which resulted from violation of the conditions of community custody. (2) The statute did not interfere with any vested rights that Mr. Flint held. (3) It did not attach new consequences to events

---

[6] RCW 9.94A.633 provides, among other things, that an offender who violates a community custody condition may be sanctioned by up to 60 days of confinement for each violation or by specified "in lieu" sanctions such as work release or home detention with electronic monitoring. A violation may itself constitute a crime for which punishment may be imposed.

completed before its enactment, because punishment was essentially the same before and after the statute's enactment, both as to the original sentence and as to consequences for community custody violations.[7]

B. *Johnson v. United States*

¶26 Mr. Flint maintains, however, that a contrary result is required under *Johnson*.

¶27 In *Johnson*, 18 U.S.C. § 3583(h)[8] was enacted after the defendant's original conviction and sentence. The statute granted district courts the power to impose an additional, second term of supervised release following reimprisonment of a defendant for violation of conditions of an initial term of supervised release. *Johnson*, 529 U.S. at 698. The United States Supreme Court rejected the argument that the additional term of supervised release was merely punishment for violating the conditions of supervised release and concluded that postrevocation penalties are attributable to the original offense. *Id*. at 701. To apply the new statute in the case at hand, the Court reasoned, would be to apply it retroactively and raise the ex post facto question of whether the statute's application would make the defendant worse off. *Id*.

¶28 In *Johnson*, however, the challenged statutory provision imposed a postrevocation penalty for the original offense, a *second* term of earned early release, following reincarceration. The same is not true in Mr. Flint's case. RCW 9.94A.737(2) does not impose any additional punishment, as explained, and for this reason does not violate the

---

[7] In addressing whether RCW 9.94A.737(2) altered the consequences of past events, for purposes of deciding whether the statute was retroactively applied, we have explained that punishment was not altered by enactment of RCW 9.94A.737(2). Accordingly, the Court of Appeals' decision to the contrary in *Madsen*, 153 Wn. App. 471, is incorrect and is overruled. RCW 9.94A.737(2) did not alter the standard of punishment that existed under the law prior to its enactment.

[8] *See* Violent Crime and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 110505(2)(B), 108 Stat. 2016-17.

ex post facto clauses of the state and federal constitutions. U.S. CONST. art. I, § 10; WASH. CONST. art. I, § 23. Accordingly, the ex post facto issue in Mr. Flint's case is not the same as in *Johnson*.

¶29 After deciding that the new law at issue in *Johnson* would impose a postrevocation penalty for the original offense, the Court then concluded that there was no congressional intent that the statute be applied to cases where the convictions occurred prior to the statute's enactment and accordingly no ex post facto issue was implicated. *Johnson*, 529 U.S. at 702. The Court examined the law as it had existed prior to amendment and concluded that under the prior version of the law the district court had discretion to order terms of supervised release following reimprisonment. *Id.* at 713. Thus, the Court upheld the district court's decision to revoke the petitioner's supervised release and impose an additional term of supervised release following the reimprisonment.

¶30 This part of *Johnson* also confirms that even if we were to decide that RCW 9.94A.737(2) could not be applied to Mr. Flint, his return to total confinement was proper. As we have explained, the department had discretion to return Mr. Flint to total confinement under the prior law. The record shows that Mr. Flint repeatedly violated community custody conditions and that sanctions of temporary confinement imposed for earlier violations had not resulted in his compliance with the conditions. Each of the two prior hearings involved multiple violations, and at the third hearing the hearing officer noted that shortly after Mr. Flint entered a stipulation regarding use of drugs, he violated the terms of community custody in that he possessed drug paraphernalia (including a pipe and scales), failed to report to his community custody corrections officer, and failed to attend substance abuse treatment. Resp. of DOC, Attach. B (Community Custody Hr'g Report at 6). Under the circumstances, Flint's return to total confinement would have been within the department's discretion

under the law that existed prior to RCW 9.94A.737(2), if that law were the applicable law.

## C. No Ex Post Facto Violation Because No Increased Punishment

¶31 But the most important point remains, with regard to punishment, that RCW 9.94A.737(2) did not increase the quantum of punishment over what it was prior to the statute's enactment. The statute does not increase the punishment for the offenses for which an individual was incarcerated before being released into community custody. The statute has not altered the terms or conditions of community custody or the potential consequences with respect to the original offenses should the offender fail to abide by the conditions of community custody. There has been no change from discretionary to mandatory consequences because the department's (or court's) discretion whether to order a return to total confinement for violation of conditions of community custody existed both before and after enactment of the statute. Finally, RCW 9.94A.737(2) has no effect on the punishments that may be imposed for the violations of conditions of community custody themselves. Because the quantum of punishment was not increased under RCW 9.94A.737(2), no ex post facto violation is shown.

### III. 2009 Legislation

¶32 Mr. Flint raises additional issues that we decline to address in light of the fact that his petition is moot. However, one issue he raises involves his claim that the statute was applied retroactively to him. He contends that the sanction imposed under RCW 9.94A.737(2) was voided by section 19 of 2009 Engrossed Substitute Senate Bill (ESSB) 5288 (LAWS OF 2009, ch. 375, § 19). He believes the legislature voided the sanction to remedy any constitutional problem with applying the provision retroactively. We disagree.

¶33  2009 ESSB 5228, section 19 provided that section 13 of the measure would expire August 1, 2009. Section 13 amended RCW 9.94A.737, subsection *(3)*, not subsection (2), the latter being the provision at issue in this case. Further, nothing in the measure or the final bill report for 2009 ESSB 5228 indicates any intent whatsoever to void any sanctions imposed under RCW 9.94A.737(2), and there is express evidence of legislative intent to the contrary. The previous year the legislature enacted the legislation that moved what had been RCW 9.94A.737(2) to RCW 9.94A-.714(1), effective August 1, 2009. LAWS OF 2008, ch. 231, §§ 16, 20, 61. As a consequence, the provision at issue in Flint's case has been continuously in effect from 2007, when it was enacted, until the present time. When the legislature moved the provision in the 2008 act, it expressly stated that nothing in sections 6 through 58 of the measure, which includes the sections moving RCW 9.94A.737(2), were to affect enforcement of any sentence imposed prior to August 1, 2009, unless the offender was resentenced after that date. LAWS OF 2008, ch. 231, § 55(6).

¶34  Under these circumstances, nothing in 2009 ESSB 5228 affected RCW 9.94A.737(2)'s application to Flint.

## CONCLUSION

¶35  Application of RCW 9.94A.737(2) (as enacted in 2007) to Mr. Flint following a third hearing on violations of conditions of community custody was not a retroactive application of the statute under our settled analysis for determining whether a statute is prospective or retroactive. Application of the statute to Flint did not increase the quantum of punishment for the crimes for which he was serving a term of community custody. Accordingly, he has failed to show that application of the statute to him violated the ex post facto clauses of the state or federal constitution.

¶36  We therefore conclude that Mr. Flint was not entitled to relief and his personal restraint petition was

properly dismissed by the Court of Appeals; however, we do so on other grounds than the ground relied on by that court, which found his petition to be frivolous.

¶37 We affirm the Court of Appeals' dismissal of Mr. Flint's petition.

C. JOHNSON, OWENS, J.M. JOHNSON, and WIGGINS, JJ., concur.

¶38 STEPHENS, J. (dissenting) — Contrary to the majority's conclusion, this case is controlled by *Johnson v. United States*, 529 U.S. 694, 120 S. Ct. 1795, 146 L. Ed. 2d 727 (2000). *Johnson* makes it clear that the triggering event for application of a statute revoking community custody is the date of the offender's underlying offense, not the time of his violation. Hence, I would hold that the statute at issue here, former RCW 9.94A.737(2) (2007), was impermissibly applied to Eric Flint retroactively. Like the *Johnson* Court, I would end my analysis there and would not reach the question of whether Flint was subjected to an ex post facto punishment. I also would not consider whether the statute impairs Flint's vested rights or if it imposes new consequences for completed events. Accordingly, I dissent.

¶39 Flint committed his offense in 2002. He violated his conditions of confinement for the third time in 2008. The Court of Appeals reasoned that former RCW 9.94A.737(2) was "enacted before he was released from total confinement and so applied throughout his term of community custody." Order Dismissing Petition (Wash. Ct. App. Oct. 5, 2009) at 2. The majority agrees. Majority at 548.

¶40 The United States Supreme Court reviewed an almost identical question in *Johnson*, 529 U.S. 694. In 1994, Congress amended federal law to give district courts the express authority to impose an additional term of supervised release upon an offender who was returned to confinement after a violation of community custody. *Id*. at 698. Johnson received such a term to follow confinement after

his community custody was revoked. He argued application of the 1994 provision, 18 U.S.C. § 3583(h), was an ex post facto violation. The lower court disagreed and "disposed of the *ex post facto* challenge by applying its earlier cases holding the application of § 3583(h) not retroactive at all: revocation of supervised release 'imposes punishment for defendants' new offenses for violating the conditions of their supervised release.' " *Id.* at 699-700 (quoting *United States v. Page*, 131 F.3d 1173, 1176 (6th Cir. 1997)). The United States Supreme Court granted certiorari to resolve a split among the circuit courts on whether application of the statute was retroactive if the underlying offense was committed before the statute's effective date. *Id.* at 699.

¶41 The Court rejected the view that postrevocation penalties are attributable to a violation of the terms of supervised release. *Id.* at 701. The Court explained:

> On this theory, that is, if the violation of the conditions of supervised release occurred after the enactment of § 3583(h), as Johnson's did, the new law could be given effect without applying it to events before its enactment.
>
> *While this understanding of revocation of supervised release has some intuitive appeal, the Government disavows it, and wisely so in view of the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release.* Although such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. See 18 U.S.C. § 3583(e)(3) (1988 ed., Supp. V). Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties.

*Id.* at 700 (emphasis added). Because the 1994 amendment imposed a penalty for the original offense, the Court in

*Johnson* invoked the "longstanding presumption" that it applied only to cases in which the initial offense occurred after its effective date. *Id.* at 702.

¶42 *Johnson* is entirely on point. In light of that case, it is clear that the Department of Corrections (DOC) mistakenly applied the 2007 statute retroactively to an offense committed in 2002. The majority's attempt to marginalize *Johnson* is unconvincing. It states that *Johnson* is different because the federal law at issue there imposed additional punishment: a second term of earned early release following incarceration. Majority at 552-53. But, *Johnson*'s conclusion that § 3583(h) did not apply retroactively had nothing to do with whether that statute authorized a new punishment. It turned solely on identifying the proper triggering event. *Johnson*, 529 U.S. at 702.

¶43 The *Johnson* Court's later discussion of whether the 1994 amendment increased the measure of punishment for Johnson's violation of supervised release was entirely separate from its discussion of retroactivity. *Id.* at 701. "Since postrevocation penalties relate to the original offense, to sentence Johnson to a further term of supervised release under § 3583(h) would be to apply this section retroactively (and to raise the remaining *ex post facto* question, whether that application makes him worse off )." *Id.* The Court concluded it was unnecessary to reach this question. *Id.* at 702 ("Given this conclusion [nonretroactivity], the case does not turn on whether Johnson is worse off under § 3583(h) than he previously was under § 3583(e)(3), as subsection (h) does not apply, and the *ex post facto* question does not arise.").

¶44 *Johnson* provides clear direction regarding the triggering event for a statute revoking community custody following community custody violations. The majority nevertheless insists that the triggering event for application of former RCW 9.94A.737(2) is the defendant's violation of community custody. Majority at 548. The majority's confusion may be understandable in light of the DOC's unclear

position on retroactivity. The DOC argues that the "statute does not operate retroactively 'merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based [o]n prior law.' " Suppl. Br. of DOC (Jan. 19, 2010) at 4 (quoting *State v. Pillatos*, 159 Wn.2d 459, 471, 150 P.3d 1130 (2007)). The majority also relies on *Pillatos*, 159 Wn.2d 459, and upon *In re Estate of Burns*, 131 Wn.2d 104, 110-11, 928 P.2d 1094 (1997). Majority at 547. But *Pillatos* explained that " '[a] statute operates prospectively when the *precipitating event* for operation of the statute occurs after enactment, even when the precipitating event originated in a situation existing prior to the enactment [of the statute].' " *Pillatos*, 159 Wn.2d at 471 (first alteration in original) (quoting *Burns*, 131 Wn.2d at 110-11). *Burns* instructs that in determining "the precipitating event giving rise to application of the statute, a court may look to the subject matter regulated by the statute." *State v. T.K.*, 139 Wn.2d 320, 330, 987 P.2d 63 (1999) (citing *Burns*, 131 Wn.2d at 112). As far as the subject of community custody violations is concerned, *Johnson* confirms that the precipitating event is the commission of the original conviction.[9] I would hold that the DOC impermissibly applied the 2007 amendment retroactively to an event occurring prior to its enactment. For this reason, I dissent.

CHAMBERS and FAIRHURST, JJ., and ALEXANDER, J. PRO TEM., concur with STEPHENS, J.

---

[9] Moreover, in *Pillatos*, the legislative act at issue "clearly contemplate[d] that either the entry of the plea or the trial is the precipitating event. Based on its plain language, the act is not retroactive in this context." *Pillatos*, 159 Wn.2d at 471. Here, the statute at issue does not clearly contemplate that the event triggering its operation is the community custody violation as opposed to the original offense. As in *Johnson*, the general rule is that the original offense is the triggering event, and absent clear legislative intent to the contrary, the statute is presumed to apply only to offenses committed after its effective date. *See Johnson*, 529 U.S. at 702.