# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PUGET SOUND ADVOCATES FOR RETIREMENT ACTION; M.G.; T.S. ON BEHALF OF S.P.; and E.S. ON BEHALF OF R.S., and SEIU 775, a labor organization, | No. 50430-8-II |
| Appellants, | |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | |
| Respondent, | |
| SEATTLE TIMES COMPANY, | |
| Defendant. | |

MAXA, C.J. – The Seattle Times submitted a Public Records Act (PRA)[1] request to the

Department of Social and Health Services (DSHS)[2] seeking disclosure of the names and

associated birthdates of individual home care providers (individual providers) who provide

personal care services to functionally disabled persons. Puget Sound Advocates for Retirement

Action (PSARA), which has members who receive services from individual providers; SEIU

775, the exclusive bargaining representative for individual providers in Washington; and three

---

[1] Ch. 42.56 RCW.

[2] On July 1, 2018, the Department of Children, Youth, and Families replaced and took over the functions of DSHS.

persons who receive services from individual providers (collectively, "appellants") appeal the trial court's order denying their motion for a permanent injunction to prevent DSHS from releasing those records.[3]

In November 2016, voters approved Initiative 1501 (I-1501), which was designed to protect seniors and vulnerable individuals. I-1501 and the implementing statutes created an exemption under the PRA for the sensitive personal information of individual providers, RCW 42.56.640(1), and prohibited state agencies from releasing individual providers' sensitive personal information, RCW 43.17.410(1). The Seattle Times submitted its PRA request after I-1501 was approved but before its effective date. In denying the appellants' motion for a permanent injunction, the trial court declined to apply I-1501 retroactively and ruled that disclosure was not prohibited under the law in effect at the time of the request.

Subsequently, this court held that article I, section 7 of the Washington Constitution protects from public disclosure the names and associated birthdates of state employees. *Wash. Pub. Emps. Ass'n, UFCW Local 365 v. Wash. St. Ctr. for Childhood Deafness & Hr'g Loss*, 1 Wn. App. 2d 225, 229, 404 P.3d 111 (2017) (*WPEA*), *review granted*, 190 Wn.2d 1002 (2018).

We hold that individual providers' names and associated birthdates are not subject to disclosure under the PRA because (1) applying this court's holding in *WPEA*, article I, section 7 protects this private information from disclosure; and (2) regardless of whether I-1501 can be applied retroactively, RCW 43.17.410(1) operates prospectively to prohibit DSHS from releasing individual providers' names and associated birthdates after the effective date of I-1501 regardless of the date the public records request was filed.

---

[3] The Seattle Times did not participate in this appeal.

Accordingly, we reverse the trial court's order denying the appellants' motion for a permanent injunction and remand for proceedings consistent with this opinion.

FACTS

I-1501 was on the November 2016 ballot. The initiative's stated intent included "to protect the safety and security of seniors and vulnerable individuals by . . . prohibiting the release of certain public records that could facilitate identity theft and other financial crimes." LAWS OF 2017, ch. 4, § 2. I-1501 further stated, "Sensitive personal information about in-home caregivers for vulnerable populations is protected because its release could facilitate identity crimes against seniors, vulnerable individuals, and the other vulnerable populations that these caregivers serve." LAWS OF 2017, ch. 4, § 7.

I-1501 added a new section to the PRA, exempting the sensitive personal information of senior citizens and individual providers from inspection and copying under the PRA. LAWS OF 2017, ch. 4, § 8. This provision was codified as RCW 42.56.640(1). I-1501 also added a section under chapter 43.17 RCW that prohibited the state or state agencies from releasing sensitive personal information of vulnerable individuals or individual providers. LAWS OF 2017, ch. 4, § 10. This provision was codified as RCW 43.17.410(1).

Voters approved I-1501 on November 8, 2016. However, the initiative and the implementing statutes did not became effective until December 8.

On November 14, the Seattle Times submitted a PRA request to DSHS for "[a] list of current individual providers (also known as state paid caregivers) and their dates of birth." Clerk's Papers at 47. On November 28, DSHS informed the Seattle Times that it would produce responsive records by approximately January 11, 2017. DSHS also informed SEIU 775 that it believed the requested records should be released under the PRA.

The appellants filed a motion for a temporary restraining order as interested third parties to prevent DSHS from releasing the records. PSARA is a non-profit membership organization that focuses on issues regarding home-based health services. Some of PSARA's members receive care from individual providers, and the members wish to keep confidential the identities of their individual providers. SEIU 775 is a labor organization that is the exclusive bargaining representative of all individual providers in Washington. The three other appellants are disabled persons who receive in-home care from individual providers.

In support of their motion, the appellants submitted a declaration from a recipient of in-home personal care and two declarations from individual providers. They all stated that they did not want anyone to access the protected health information of in-home care recipients, including where they live and whether they qualify for public assistance. The trial court granted the temporary restraining order and later granted a motion for a preliminary injunction.

The appellants subsequently filed a motion for a permanent injunction. The trial court ruled that the provisions of I-1501 did not apply retroactively and denied the motion. The appellants appeal the trial court's denial of their motion for a permanent injunction.

ANALYSIS

A.    LEGAL PRINCIPLES – PRA

The PRA mandates the disclosure of public records. *SEIU 775 v. Dep't of Social & Health Servs.*, 198 Wn. App. 745, 749, 396 P.3d 369, *review denied* 189 Wn.2d 1011 (2017). Accordingly, state agencies have "an affirmative obligation to disclose public records requested under the PRA unless a specific exemption applies." *Id.* The three sources of PRA exemptions are (1) exemptions specified in the PRA; (2) under RCW 42.56.070(1), any "other statute" that exempts or prohibits disclosure; and (3) the Washington Constitution. *Id.*

The PRA specifically allows an interested third party to seek an injunction to prevent an agency from disclosing records. RCW 42.56.540. Under RCW 42.56.540, disclosure may be enjoined on a motion by an agency or a "person who is named in the record or to whom the record specifically pertains" if disclosure "would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital government functions."

We conduct a two-part inquiry when an injunction is sought under the PRA: (1) "determine whether the records are exempt," and (2) "determine whether the PRA injunction standard is met." *Lyft, Inc. v. City of Seattle*, 190 Wn.2d 769, 790, 418 P.3d 102 (2018). The general three-part injunction test under CR 65 is inapplicable. *Id.* at 785, 790. The party seeking to prevent disclosure has the burden of proof. *Id.* at 791. We review de novo a trial court's grant or denial of an injunction under RCW 42.56.540. *Id.*

B.     CONSTITUTIONAL PRIVACY INTEREST

The appellants argue that under *WPEA*, DSHS cannot release the requested records because the names and associated birthdates of individual providers are protected from disclosure under article I, section 7. We agree.

1.   Right to Privacy

Article I, section 7 states, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." The right to privacy includes the right to nondisclosure of intimate personal information. *Serv. Emps. Int'l Union Loc. 925 v. Freedom Found.*, 197 Wn. App. 203, 222, 389 P.3d 641 (2016) (*SEIU 925*). This constitutional protection may prevent the disclosure of certain public records under the PRA. *WPEA*, 1 Wn. App. 2d at 232; *see also SEIU 925*¸ 197 Wn. App. at 222.

5

We apply a two-part analysis in determining whether article I, section 7 exempts certain records from disclosure under the PRA. *SEIU 925*, 197 Wn. App. at 222. First, we must determine whether the State unreasonably intruded into a person's private affairs. *Id.* Second, we must determine whether the authority of law justifies the intrusion into the person's private affairs. *Id.*

"Private affairs are those that reveal intimate or discrete details of a person's life." *Id.* The parameters of private affairs are determined based on the historical treatment of the interest asserted. *Id.* If historical treatment does not demonstrate a constitutional protection, the court examines whether the person had a reasonable expectation of privacy based on the nature of the information that the government may have access to and the extent to which the information has been made public voluntarily. *Id.*

2. Privacy Interest in Names and Birthdates

In *WPEA*, this court addressed the issue of whether state employees' names and associated birthdates are protected private information under article I, section 7. 1 Wn. App. 2d at 232-38. In that case, an organization sent PRA requests to several state agencies seeking the names, birthdates, and work email addresses of union-represented state employees. *Id.* at 229-30. Employee unions sought temporary and permanent injunctions to prevent the agencies from disclosing the records, arguing that public disclosure would violate the employees' constitutional right to privacy. *Id.* at 230, 234.

The court determined that public disclosure of these records could expose details of the employees' private lives and subject them to an ongoing risk of identity theft and other harms. *Id.* at 234. The court held that state employees have an expectation of privacy in their names and corresponding birthdates. *Id.*

6

Next, the court considered the state's justification for the disclosure of public records and held that "the PRA does not justify the intrusion into the state employees' constitutionally protected expectation of privacy in their full names associated with their corresponding birthdates." *Id.* at 237. The court held that the state employees' unions were entitled to a permanent injunction because "the public disclosure of birthdates of individually identified state employees is not in the public interest." *Id.* In addition, the court stated that public disclosure of birthdates, "do[es] not inform the public of facts related to a government function . . . and exposes them to an ongoing risk of identity theft and other potential personal harms." *Id.*

The Supreme Court has granted review in *WPEA*. However, we believe that the reasoning of *WPEA* is sound and confirm the holding in that case.

Here, the Seattle Times requested the same information from state agencies regarding the same state employees that this court addressed in *WPEA*. Applying *WPEA*, we hold that article I, section 7 protects from PRA disclosure individual providers' names and associated birthdates.

C.      PROSPECTIVE APPLICATION OF RCW 43.17.410(1)[4]

The appellants and DSHS disagree as to whether I-1501 applies retroactively. However, the appellants argue that even if I-1501 does not apply retroactively, RCW 43.17.410(1) operates prospectively to prohibit DSHS from *releasing* the records after I-1501's effective date regardless of when the PRA request was made. We agree with the appellants.

        1.    RCW 43.17.410(1) Analysis

Unlike RCW 42.56.640(1), RCW 43.17.410(1) does not merely adopt a PRA exemption and its scope is not limited to the PRA context. RCW 43.17.410(1) contains an affirmative,

---

[4] Although application of *WPEA* resolves this case, we address the prospective application of RCW 43.17.410(1) because the Supreme Court has accepted review of *WPEA*.

unqualified prohibition against a state agency releasing sensitive personal information. And that prohibition applies to all state agencies after December 8, 2016. Therefore, the appellants argue that retroactivity is unnecessary regarding this statute. They claim that regardless of when the PRA request was submitted, RCW 43.17.410(1) *now* prohibits DSHS from releasing the names and associated birthdates of individual providers.

The appellants' argument essentially is that subjecting DSHS to the RCW 43.17.410(1) prohibition against releasing individual providers' sensitive personal information would represent a *prospective* application of the statute, not a retroactive application.

> Prospective application of a statute occurs when the event that triggers or precipitates operation of the statute takes place after its enactment. Prospective application can be found even if the triggering event originates in a situation that existed before the statute was enacted.

*In re Pers. Restraint of Flint*, 174 Wn.2d 539, 547, 277 P.3d 657 (2012) (citation omitted). In addition, a statute can be treated as not operating retroactively even if its application "upsets expectations based on prior law." *Id.*

Here, the event that would trigger application of RCW 43.17.410(1) is DSHS's obligation under the PRA to actually release the information the Seattle Times requested, not the request itself. At this point, that event could only occur after the effective date of I-1501 and RCW 43.17.410(1). The fact that the obligation to release originated in a PRA request that preexisted the effective date does not affect the prospective application of RCW 43.17.410(1).

If DSHS had not been barred from releasing records by a temporary injunction, RCW 43.17.410 would not have applied and DSHS would have been required to release any responsive records. But because the disclosure was delayed by an injunction and RCW 43.17.410 is now in effect, DSHS cannot lawfully release the records.

We hold that RCW 43.17.410(1) prohibits a state agency from releasing individual providers' names and birthdates at any time after the effective date of that statute, regardless of whether that information was requested before the effective date.

2. Vested Right Exception

Even if application of a statute ordinarily would be prospective, "[a] statute has retroactive effect if it takes away or impairs a party's vested rights acquired under existing laws." *Flint*, 174 Wn.2d at 547. Here, this means that if a PRA request creates a "vested right" to the information requested before the effective date of I-1501, application of RCW 43.17.410(1) after that effective date would be retroactive.

However, DSHS does not make a vested right argument even though the appellants discuss it at length in their brief in the context of their retroactivity analysis. Therefore, we decline to address this argument.

D.    OTHER PERMANENT INJUNCTION ELEMENTS

For the reasons discussed above, we hold that individual providers' names and associated birthdates are exempt from production under the PRA and that RCW 43.17.410(1) prohibits DSHS from disclosing that information. The parties do not discuss whether this holding requires the issuance of a permanent injunction. Therefore, we do not address this issue and remand to the trial court to determine if a permanent injunction is appropriate in light of our holding.

CONCLUSION

We reverse the trial court's order denying the appellants' motion for a permanent injunction and remand for further proceedings consistent with this opinion.

No. 50430-8-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
BJORGEN, J.

_____
LEE, J.

10