IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 78981-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| HONOLULU MOLIA, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Honolulu Molia seeks resentencing, arguing that his sentence of life without the possibility of parole is unauthorized because a statutory amendment enacted after he was sentenced removed second degree robbery from the list of most serious offenses. Because Molia has not shown that the subsequent change in the statute applies to his case either prospectively or retroactively, we affirm.

FACTS

Honolulu Molia was convicted of three counts of rape of a child in the first degree, domestic violence; five counts of incest in the first degree, domestic violence; and two counts of incest in the second degree, domestic violence. The court also found as an aggravating circumstance for eight of the ten counts that the offenses were part of an ongoing pattern of psychological, physical, or sexual

abuse of the same victim or multiple victims manifested by multiple incidents over a prolonged period of time.

At his sentencing in 2018, the court found that Molia's prior separate convictions for second degree robbery and second degree assault of a child had been proven by a preponderance of the evidence. The court found that the prior convictions and five of his current offenses were most serious offenses and Molia was therefore a persistent offender. Molia was sentenced to life imprisonment without the possibility of parole. He appealed.

ANALYSIS

Molia argues that he should be resentenced because a recent legislative change removing second degree robbery as a most serious offense applies either prospectively or retroactively to his sentence. We review questions of law de novo. State v. Pillatos, 159 Wn.2d 459, 469, 150 P.3d 1130 (2007).

The Sentencing Reform Act (SRA)[1] provides that a persistent offender shall be sentenced to life imprisonment without the possibility of release. RCW 9.94A.570. A "persistent offender" is one who has been convicted in Washington of a felony considered a most serious offense and who has been convicted on two or more prior separate occasions of felonies considered most serious offenses. RCW 9.94A.030(38)(a). The statute contains a list of felonies that are considered most serious offenses. RCW 9.94A.030(33). This list includes any class A felony and assault of a child in the second degree, among others. RCW 9.94A.030(33)(a), (c).

---

[1] Chapter 9.94A RCW.

When Molia was sentenced in September 2018, robbery in the second degree was listed as a most serious offense. Former RCW 9.94A.030(33)(o); Laws of 2018, ch. 166, § 3. In April 2019, the legislature approved an amendment to the statute that removed robbery in the second degree from the list of most serious offenses. Laws of 2019, ch. 187, § 1. The amendment became effective on July 28, 2019. Id.

As a preliminary matter, the State argues that Molia's claim of error is not justiciable on direct appeal because he does not argue that the trial court erred in any way. It contends that "[a]ny claim of unlawful restraint that is premised on a statutory amendment that occurred after sentencing and the filing of the notice of appeal must be raised in a personal restraint petition." Assuming without deciding that this appeal is properly before this court, we will reach the merits of Molia's argument.

I.      Prospective Application

Molia argues that the change in the law applies prospectively to his case because it is still pending on direct appeal and not yet final, or, in the alternative, that the statutory change applies retroactively.

Division Two of this court recently considered a similar argument. State v. Jenks, No. 52450-3-II, slip op. (Wash. Ct. App. Mar. 3, 2020) (published in part), https://www.courts.wa.gov/opinions/pdf/D2%2052450-3-II%20Published%20Opinion.pdf. In 2017, Jenks was sentenced to a term of life in prison without the possibility of parole as a persistent offender after being convicted of a third most serious offense. Id. at 2. One of his prior most serious

offense convictions was for second degree robbery. Id. Like Molia, Jenks argued that the 2019 amendment to RCW 9.94A.030(33) "should be applied on appeal to invalidate his sentence." Id. at 3. Division Two disagreed. Id.

Any sentence imposed under the provisions of the SRA "shall be determined in accordance with the law in effect when the current offense was committed." RCW 9.94A.345. However, "[t]o say that we look to the law in effect at the time the defendant committed the offense does not answer whether the law applies retroactively or prospectively." In re Carrier, 173 Wn.2d 791, 809, 272 P.3d 209 (2012).

When assessing whether a new statute applies prospectively or retroactively, we consider "'whether the new provision attaches new legal consequences to events completed before its enactment.'" In re Flint, 174 Wn.2d 539, 548, 277 P.3d 657 (2012) (quoting Pillatos, 159 Wn.2d at 471). If the "triggering event" for the application of the statute occurred before the effective date of the amendment, we analyze whether the change applies retroactively to this case. Pillatos, 159 Wn.2d at 471. However, if the triggering event occurred or will occur after the effective date of the statute, the statute presumptively applies prospectively to the case. Flint, 174 Wn.2d at 547. "A statute operates prospectively when the precipitating event for operation of the statute occurs after enactment, even when the precipitating event originated in a situation existing prior to enactment." Pillatos, 159 Wn.2d at 471 (emphasis omitted) (quoting In re Estate of Burns, 131 Wn.2d 104, 110-11, 928 P.2d 1094 (1997)). "To determine what

event precipitates or triggers application of the statute, we look to the subject matter regulated by the statute." Carrier, 173 Wn.2d at 809.

RCW 9.94A.030 is a definitional statute, and the amended provision governs only which felonies are defined as "most serious offenses." RCW 9.94A.030(33). This term is also used in the definition of a "persistent offender." RCW 9.94A.030(38). The court applies these provisions when it determines the appropriate sentence for a person who falls within these statutory definitions. RCW 9.94A.570.

Molia argues that the triggering event for the operation of the statutory amendment is the termination of his direct appeal, which has not yet happened. Molia relies primarily on two relatively recent Supreme Court cases in support of his argument: State v. Jefferson and State v. Ramirez. 192 Wn.2d 225, 429 P.3d 467 (2018) (plurality opinion); 191 Wn.2d 732, 749, 426 P.3d 714 (2018).

Division Two addressed the application of Ramirez to this issue in Jenks. Jenks, slip op. at 5–7. The Ramirez court concluded that changes to the statutes concerning permissible legal financial obligations applied prospectively to a pending appeal because the amendments "pertain[ed] to costs imposed upon conviction and Ramirez's case was not yet final when the amendments were enacted." 191 Wn.2d at 749. The Jenks court found that Ramirez "clearly limited its holding to 'costs imposed on criminal defendants following conviction[,]'" rather than stating "a rule of general application to all sentences." Jenks, slip op. at 6 (quoting Ramirez, 191 Wn.2d at 747). It concluded that Ramirez did not support

the argument that the 2019 amendment to RCW 9.94A.030(33) must be applied prospectively to cases pending on direct appeal. Id. at 7. We agree.

The Jenks court, however, did not consider the application of Jefferson to this issue. In Jefferson, the Supreme Court considered whether GR 37, a general court rule adopted to address deficiencies in the Batson[2] framework for assessing discriminatory use of peremptory strikes, applied to Jefferson's case on appeal. 192 Wn.2d at 243. The rule did not become effective until after Jefferson's trial, voir dire, and Batson challenge had occurred. Id. The Court determined that the precipitating event in the context of a Batson challenge was the voir dire itself, which had occurred before the enactment of the rule. Id. at 248. Although Jefferson did not concern sentencing, the Court summarized its interpretation of the case law:

> [W]e generally hold that when the new statute concerns a postjudgment matter like the sentence or revocation of release, or a prejudgment matter that has not yet occurred because of the interlocutory nature of the appeal, then the triggering event is not a "past event" but a future event. In such a case, the new statute or court rule will apply to the sentence or sentence revocation while the case is pending on direct appeal, even though the charged acts have already occurred. [See, e.g., Flint, 174 Wn.2d at 548; State v. Blank, 131 Wn.2d 230, 249, 930 P.2d 1213 (1997).] In contrast, where the new statute concerns a problem with the charging document but the trial and conviction are over, then the triggering event is over—so the new statute does not apply on appeal to that past event. Pillatos, 159 Wn.2d at 471, 150 P.3d 1130.

Id. at 247.

Despite the broad phrasing, neither case cited by the Jefferson Court concerns a change in sentencing statutes. In Flint, the Court found that the

---

[2] Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

triggering event for application of the statute regarding the effect of community custody violations was the finding that a defendant had "committed violation(s) of conditions of community custody at a third violation hearing." 174 Wn.2d at 548. In Blank, the Court found that the triggering event for application of a statute allowing courts to require a convicted offender to pay appellate costs was termination of the appeal and affirmance of a defendant's conviction. Blank, 131 Wn.2d at 249.

Molia argues that Jefferson and Ramirez require us to conclude that the triggering event for application of the 2019 amendment to RCW 9.94A.030 in this case is the termination of his direct appeal, rather than the imposition of his sentence. Although Jefferson contains some expansive language indicating that "a newly enacted statute or court rule generally applies to all cases pending on direct appeal and not yet final[,]" it did not involve an amendment to a statute affecting sentencing. 192 Wn.2d at 246. Accordingly, the applicability of its statements on post-judgment matters to the current case is limited.

Likewise, Ramirez does not compel the result that Molia suggests. Although the Ramirez Court concluded that the newly enacted bill applied prospectively to Ramirez's case "because the statutory amendments pertain to costs imposed on criminal defendants following conviction, and Ramirez's case was pending on direct review and thus not final when the amendments were enacted," it did so in the context of fashioning an unusual remedy for a Blazina[3] error. 191 Wn.2d at 746–47. The Supreme Court held that the trial court had failed

---

[3] State v. Blazina, 182 Wn.2d 827, 344 P.3d 680 (2015).

to make an adequate individualized inquiry into Ramirez's current and future ability to pay before imposing discretionary legal financial obligations, as required by Blazina. Id. at 746. Although the usual remedy would have been to remand for resentencing, the Court concluded that the newly enacted statutory amendment prohibiting courts from imposing discretionary costs and filing fees on defendants who were indigent at the time of sentencing would have applied at the resentencing. Id. Therefore, the Court found resentencing to be unnecessary and remanded the case to the trial court for amendment of the judgment and sentence to strike the improperly imposed legal financial obligations. Id. at 746, 750.

Ramirez does not require the triggering event here to be the termination of Molia's appeal because of its procedural posture and because it concerned only costs and fees attendant to a sentence rather than the sentence itself. Molia's situation is also distinct from the multitude of appeals that have cited Ramirez to argue that legal financial obligations, though properly imposed at the time of sentencing, should be stricken from cases still pending on appeal. We are not aware of any case in which the State has opposed the striking of these fees where the record made clear that the fees would not be permitted under the current statutes, even when remand is not required on any other issue. The State makes no such concession here.

Molia's requested remedy also provides some insight. Molia requests remand for resentencing so that the court can apply the amended statute when assessing his criminal history. This suggests that the court has already performed the application of the statute to his case. The triggering event for application of the

amended statute has already occurred, and the appropriate analysis is whether the amendment applies retroactively to Molia's case on appeal.

II.     Retroactive Application

Molia argues in the alternative that the change in the law applies retroactively to his case.

Washington courts have long held that, under the saving clause of RCW 10.01.040, "amendments to criminal statutes (which include reclassification of crimes) do not apply retroactively to offenses committed before the effective dates of those amendments." Rivard v. State, 168 Wn.2d 775, 781, 231 P.3d 186 (2010). Accordingly, statutory amendments are presumed to apply only prospectively to offenses committed on or after the effective date of the amendment unless the legislature indicates a contrary intent. State v. Humphrey, 139 Wn.2d 53, 55, 60, 983 P.2d 1118 (1999). An amendment that is curative or remedial applies retroactively even without language showing legislative intent unless the statute is subject to RCW 10.01.040. State v. Kane, 101 Wn. App. 607, 613, 5 P.3d 741 (2000).

Molia argues that, by amending the statute, the legislature downgraded the culpability of second degree robbery for persistent offender sentences, which retroactively alters the status of prior convictions. He relies primarily on State v. Wiley in support of this contention. 124 Wn.2d 679, 880 P.2d 983 (1994). The Jenks court considered and rejected precisely this same argument. Jenks, slip op. at 7–9. We agree with that analysis and find that Wiley does not compel retroactive application of the amendment to Molia's case.

The 2019 amendment to RCW 9.94A.030 removing second degree robbery as a most serious offense did not contain any indication that the legislature intended the change to apply retroactively. Laws of 2019, ch. 187, § 1; Jenks, slip op. at 10. The saving statute applies to sentences for persistent offenders. Jenks, slip op. at 11. Molia did not argue that the amendment was curative or remedial. Molia has not overcome the presumption that the amendments apply only prospectively. The 2019 amendment to RCW 9.94A.030(33) removing second degree robbery from the list of most serious offenses does not apply to his case on appeal.

Affirmed.

WE CONCUR: